# EXHIBIT E

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                     WESTERN DISTRICT OF NORTH CAROLINA
 2                         CHARLOTTE DIVISION

 3   IN RE:                     :     Case No. 17-31795-LTB

 4   BESTWALL LLC,              :     Chapter 11

 5        Debtor,              :     Charlotte, North Carolina
                                      Thursday, March 4, 2021
 6                             :     9:34 a.m.

 7   : : : : : : : : : : : : : : : : : : : : : : : : : : : :

 8
                          TRANSCRIPT OF PROCEEDINGS
 9           BEFORE THE HONORABLE LAURA TURNER BEYER,
                  UNITED STATES BANKRUPTCY JUDGE
10
     APPEARANCES (via ZoomGov):
11
     For the Debtor:            Robinson, Bradshaw & Hinson, P.A.
12                              BY:  GARLAND S. CASSADA, ESQ.
                                     RICHARD C. WORF, ESQ.
13                                   STUART L. PRATT, ESQ.
                                101 N. Tryon Street, Suite 1900
14                              Charlotte, NC  28246

15                              Jones Day
                                BY:  GREGORY M. GORDON, ESQ.
16                              2727 North Harwood St., Suite 500
                                Dallas, TX  75201-1515
17
                                Jones Day
18                              BY:  JEFFREY B. ELLMAN, ESQ.
                                1420 Peachtree Str., N.E., #800
19                              Atlanta, GA  30309

20
     Audio Operator:            COURT PERSONNEL
21
     Transcript prepared by:    JANICE RUSSELL TRANSCRIPTS
22                              1418 Red Fox Circle
                                Severance, CO  80550
23                              (757) 422-9089
                                trussell31@tdsmail.com
24
     Proceedings recorded by electronic sound recording; transcript
25   produced by transcription service.
```

```
 1  APPEARANCES (via ZoomGov continued):

 2  For the Debtor:             J. JOEL MERCER, ESQ.
                                133 Peachtree Street, 39th Floor
 3                              Atlanta, GA  30303

 4                              King & Spalding LLP
                                BY:  RICHARD A. SCHNEIDER, ESQ.
 5                              1180 Peachtree Street, NE, #1600
                                Atlanta, GA  30309
 6
     For Official Committee of  Robinson & Cole LLP
 7   Asbestos Claimants:        BY:  NATALIE D. RAMSEY, ESQ.
                                     DAVIS LEE WRIGHT, ESQ.
 8                              1201 N. Market Street, Suite 1406
                                Wilmington, DE  19801
 9
     For Rick Bankston, Member  Shepard Law, P.C.
10   of ACC:                    BY:  MICHAEL SHEPARD, ESQ.
                                160 Federal Street
11                              Boston, MA  02110

12   For Georgia-Pacific LLC:   Debevoise & Plimpton LLP
                                BY:  MARK P. GOODMAN, ESQ.
13                                   M. NATASHA LABOVITZ, ESQ.
                                919 Third Avenue
14                              New York, NY  10022

15                              Rayburn Cooper & Durham, P.A.
                                BY:  JOHN R. MILLER, JR., ESQ.
16                              227 West Trade St., Suite 1200
                                Charlotte, NC  28202
17
     For Georgia-Pacific Holdings: Reed Smith LLP
18                              BY:  DEREK J. BAKER, ESQ.
                                1717 Arch Street, Suite 3100
19                              Philadelphia, PA  19103

20   For Asbestos Claimants:    Buck Law Firm
                                BY:  ROBERT C. BUCK, ESQ.
21                              3930 East Jones Bridge Road, #360
                                Peachtree Corners, GA  30092
22
     For the United States:     U. S. Department of Justice
23                              BY:  SETH B. SHAPIRO, ESQ.
                                1100 L Street, NW, Room 7114
24                              Washington DC  20005

25
```

```
 1   APPEARANCES (via ZoomGov continued):

 2
     For Future Claimants'          Alexander Ricks, PLLC
 3   Representative, Sander L.      BY:  FELTON PARRISH, ESQ.
     Esserman:                      1420 E. 7th Street, Suite 100
 4                                  Charlotte, NC  28204

 5                                  Young Conaway
                                    BY:  EDWIN J. HARRON, JR., ESQ.
 6                                       SHARON ZIEG, ESQ.
                                    1000 North King Street
 7                                  Wilmington, DE  19801

 8   For Manville Personal Injury  Friedman Kaplan
     Settlement Trust and Delaware BY:  JASON C. RUBINSTEIN, ESQ.
 9   Claims Processing Facility:    7 Times Square
                                    New York, NY  10036-6516
10

11   ALSO PRESENT (via ZoomGov):   SANDER L. ESSERMAN
                                    Future Claimants' Representative
12                                  2323 Bryan Street, Suite 2200
                                    Dallas, TX  75201-2689
13
                                    SHELLEY K. ABEL
14                                  Bankruptcy Administrator
                                    402 West Trade Street, Suite 200
15                                  Charlotte, NC  28202

16
                                    JON INT-HOUT
17                                  Technology Consultant

18

19

20

21

22

23

24

25
```

1               P R O C E E D I N G S

2        (Call to Order of the Court)

3             THE COURT:  All right.  Good morning.

4             We are here in the Bestwall LLC case, Case No. 17-

5    31795.  We've got several matters.  I think we have about eight

6    matters on the calendar and six of which are for the Court's

7    ruling today and then we've got two other matters that we will

8    need to address.

9             We will -- and for the record, these hearings are

10   being conducted by Zoom.  I understand some people are

11   connected by video by Zoom and others are connected by phone.

12            And I want to start by saying, folks, that I apologize

13   for having had to continue these hearings for a ruling until

14   today.  We -- as you can imagine, we have had a flurry of

15   Subchapter V cases filed in the recent past and some of them

16   came to a head just after our January hearing and it seems

17   we've had more contested confirmation hearings in the last few

18   weeks than we've had in the last couple of years and I suspect

19   that that's not likely to change in the near future, given the

20   current state of the economy.

21            But I appreciate your patience and your flexibility

22   with me continuing these hearings until today.

23            So with that, we will -- I'll ask that you all

24   announce your appearances and as we do, I'm just going to call

25   off the names of those folks who I understand are appearing by

1  video and who may plan to speak, but I also recognize that

2  there are others who are, again, on the -- on -- appearing by

3  video and by phone.

4          But I will start with Mr. Greg Gordon.

5          MR. GORDON:  Good morning, your Honor.  I am here.

6          THE COURT:  Okay.

7          Ms. Ramsey?

8          MS. RAMSEY:  Good morning, your Honor.

9          THE COURT:  Mr. Harron?

10         MR. HARRON:  I'm here, your Honor.  Good morning.

11         THE COURT:  Good morning.

12         Mr. Goodman?

13         MR. GOODMAN:  Good morning, your Honor.

14         THE COURT:  Ms. Labovitz?  And, Ms. Labovitz, you were

15  muted.

16         MS. LABOVITZ:  I'm so sorry, your Honor.  Good

17  morning.

18         THE COURT:  Mr. Miller?

19         MR. MILLER:  Good morning, your Honor.

20         THE COURT:  Mr. Cassada?

21         MR. CASSADA:  Good morning, your Honor.  Garland

22  Cassada here.  I've got -- I'm accompanied by Rich Worf and

23  Stuart Pratt.

24         THE COURT:  Okay.  All right.

25         Mr. Wright?

```
 1              Thank you.

 2              Mr. Wright?

 3              MR. WRIGHT:  Good morning, your Honor.  Good morning,

 4   your Honor.

 5              THE COURT:  Mr. Esserman?

 6              MR. ESSERMAN:  Morn -- whoop.  Good morning, your

 7   Honor.  Present.

 8              THE COURT:  Okay.

 9              Mr. Parrish?

10              MR. PARRISH:  Good morning, your Honor.

11              THE COURT:  You jumped when you appeared in the video

12   there, Mr. Parrish.

13              Ms. Zieg?

14              MS. ZIEG:  Good morning, your Honor.

15              THE COURT:  Okay.

16              Mr. Schneider?

17              MR. SCHNEIDER:  Morning, your Honor.

18              THE COURT:  Mr. Ellman?

19              MR. ELLMAN:  Good morning, your Honor.

20              THE COURT:  Mr. Baker?

21              MR. BAKER:  Morning, your Honor.

22              THE COURT:  Mr. Shepard?

23              MR. SHEPARD:  Thank you, your Honor.  Good morning.

24              THE COURT:  Mr. Rubinstein?

25              MR. RUBINSTEIN:  Good morning, your Honor.
```

```
 1              THE COURT:  Mr. Shapiro?

 2              MR. SHAPIRO:  Morning, your Honor.

 3              THE COURT:  Mr. Buck?

 4              MR. BUCK:  Good morning, your Honor.

 5              THE COURT:  Ms. Abel?

 6              MS. ABEL:  Good morning, your Honor.  Shelley Abel.

 7              THE COURT:  Mr. Mercer?

 8              MR. MERCER:  Good morning, your Honor.

 9              THE COURT:  All right.

10         And then Mr. Int-Hout of Jones Day is also on my list.

11              MR. INT-HOUT:  Good morning, your Honor.  I'll be in

12    the capacity of a trial tech today.  Thank you.

13              THE COURT:  Okay.  Thank you.

14         All right.  Is there anybody else who would like to

15    announce an appearance who anticipates that they may need to

16    speak today?  Otherwise, if you're just listening in, I don't

17    think that you need to announce your appearance.

18         (No response)

19              THE COURT:  All right.

20         With that, then, the Court will rule on the motions

21    that it heard over the course of January 21st and 22nd.  And

22    let me start by saying that as has become your custom in this

23    case, you presented the Court with well briefed and well argued

24    motions which I had to give a lot of consideration and suffice

25    it to say, this was not an easy call.  But having considered
```

1    all of the pleadings, the relevant evidence, and the arguments

2    of counsel made at the hearings that took place on January 21st

3    and 22nd, I'll sort of go through each motion.

4          With respect to the motion for personal injury

5    questionnaires, I've concluded that I should grant the debtor's

6    motion for personal injury questionnaires pursuant to Rule

7    2004.  Based on Dr. Bates' declaration, the personal injury

8    questionnaire discovery appears to be relevant to a

9    determination of the asbestos liability of the debtor, the

10   administration of the debtor's estate, plan formulation, and

11   plan confirmation.  And I conclude I have the authority to

12   order the use of the questionnaire pursuant to Rule 2004.  It's

13   the most efficient way to proceed and avoid undue burden.

14         The ACC and the FCR have raised many procedural

15   objections to the use of the personal injury questionnaire

16   which I understand have not been raised in previous asbestos

17   bankruptcy cases in which debtor sought to use a questionnaire.

18   In fact, in reviewing all of the orders approving the use of

19   questionnaires attached to the debtor's motion I believe two

20   made any reference to the Rule pursuant to which the

21   questionnaire was being ordered and those two were pursuant to

22   Rule 2004.  I acknowledge that the relief sought by the debtor

23   does not fit neatly into Rule 2004, but the reality is that

24   questionnaires have been used in mass tort bankruptcy cases

25   across the country, including in this Circuit, over the course

1  of many years and I think that's because courts and parties in

2  those cases have acknowledged that the questionnaires will be

3  helpful to all parties and efficient for purposes of an

4  estimation proceeding.  Even in the Garlock case, the order

5  authorizing the debtors to use and issue the questionnaire was

6  issued pursuant to Rule 2004, but recognized that the

7  questionnaire constituted a hybrid form of discovery.

8         The debtor seeks to serve the questionnaire on counsel

9  of record for the claimants by U. S. Mail, unless the claimants

10  were unrepresented, then on the claimants, themselves.  The ACC

11  and the FCR argued that the debtor should be required to issue

12  subpoenas to each of the affected mesothelioma claimants to

13  obtain the information sought in the questionnaire.  In

14  reviewing the orders attached to the debtor's motion in which

15  prior courts ordered the use of a questionnaire, none of them

16  required the issuance of a subpoena.  That's likely because to

17  do so is neither practical nor feasible.

18         In addition, what the debtor has proposed is

19  consistent with this Court's order entered on November 8, 2017

20  at the inception of the case which authorizes the debtor to

21  serve all notices, mailings, filed documents, and other

22  communications relating to this case on the claimants in care

23  of their counsel.  I suspect the parties agreed on this

24  provision in the Court's November 8, 2017 order because they

25  recognized the efficiency and necessity of serving the

1  documents in this case to claimants' counsel, rather than the

2  claimants in order to avoid confusion and delay.  And I

3  question whether the claimants' counsel really want the

4  questionnaires to be served directly on the claimants in that,

5  ultimately, they will be the ones who have to complete the form

6  because they have the necessary information to do so.  Again,

7  serving the questionnaire on the claimants by subpoena would

8  likely just create confusion and delay.

9        With respect to the pending proceeding rule, the Court

10  concludes that precluding the discovery sought by the debtor

11  would not serve the purpose of the pending proceeding rule.

12  The reason for the rule is to avoid Rule 2004 usurping the

13  narrower rules for discovery in a pending adversary proceeding.

14  However, the Court holds the ultimate discretion whether to

15  permit the use of Rule 2004 and courts have for various reasons

16  done so despite the existence of pending litigation.

17        With respect to the litigation pending in state court,

18  that litigation is subject to the automatic stay.  And with

19  regards to the contested estimation proceeding, as a practical

20  matter the debtor's motion for personal injury questionnaires

21  was filed and pending prior to the entry of the order requiring

22  estimation which initiated the contested matter.  More

23  importantly, I can't conclude that the debtor is seeking to use

24  the questionnaires pursuant to Rule 2004 in order to avoid the

25  more restrictive discovery rules applicable in adversary

1   proceedings and have determined that the debtor is using Rule

2   2004 for a proper purpose, given the facts and circumstances of

3   this case.

4          The ACC argues that the questionnaire imposes an undue

5   burden on the claimants who are being asked to complete the

6   questionnaire, but the objection was more global, rather than

7   being focused on specific questions that it found

8   objectionable.  One exception to that was the request for

9   settlement amounts, but I don't see the harm in providing that

10  information since it's being asked for on an aggregate basis

11  for tort defendants and trusts.  And I understand that

12  information was required in all of the questionnaires attached

13  to the debtor's motion with the exception of the <u>Specialty</u>

14  <u>Products</u> case.

15         The ACC insists that the debtor has an extensive

16  database and information which it should be required to first

17  examine and only then should it be allowed to seek the missing

18  parts from the claimants.  As is evidenced by Dr. Bates'

19  testimony, I'm not convinced that that proposal is a practical,

20  feasible, or efficient alternative because the debtor's

21  database does not possess complete and up-to-date information

22  for pending asbestos claims.  And Mr., and as Mr. Worf said,

23  that proposal would likely be an administrative nightmare.

24         The Court does not take lightly the work completing

25  this questionnaire will create for the claimants and their

1    counsel.  I am convinced, however, based on comparing the

2    debtor's questionnaire to those used in prior asbestos cases

3    that it is consistent with those questionnaires, if not more

4    finely well tuned in light of experience gained from prior

5    cases.

6         In addition, the debtor has taken steps to minimize

7    the burden of completing the questionnaire by allowing

8    claimants' firms to attach documents in lieu of providing

9    explanation on the questionnaire, by creating a fillable PDF in

10   which claimants can type their answers, and, hopefully, by the

11   use of an electronic portal to which the claimants can submit

12   the questionnaires.

13        Finally, with respect to delay, the questionnaire

14   requires that it be returned within four months of service,

15   which is consistent with every questionnaire attached to the

16   debtor's motion and the Court's timeline for getting to an

17   estimation proceeding.

18        The Court grants the personal injury questionnaire

19   motion, subject to the concessions that were agreed to by the

20   debtor at the conclusion of the hearings in January.  The

21   debtor has agreed to limit the questionnaire to the pre-1978

22   joint compound products and also agreed to having a product

23   list go out with the questionnaires.

24        With respect to the motion for Rule 2004 examination

25   of bankruptcy trusts, I conclude I should grant the debtor's

1   motion for Rule 2004 exam of bankruptcy trusts pursuant to Rule

2   2004 and that the debtors have met their burden of showing that

3   the information sought is both relevant and necessary to the

4   case.  The information is relevant to the determination of

5   whether pre-petition settlements of mesothelioma claims provide

6   a reliable basis for estimating the debtor's asbestos liability

7   which has been put at issue by the ACC and the FCR.  It's

8   relevant to Dr. Bates' estimation of the debtor's liability and

9   it will assist the debtor in developing its trust distribution

10  procedures and evaluating those procedures proposed by the ACC

11  and the FCR in their plan.  And I'm sufficiently convinced

12  based on the evidence introduced by the debtor regarding the

13  eight cases in which it alleges there was a failure to disclose

14  material exposure evidence that there's a good faith basis for

15  the trust discovery it seeks.

16       But I share Mr. Rubinstein's concerns about the

17  confidential, proprietary, and inherently sensitive nature of

18  the data that would be collected by the debtor.  So I will

19  grant the motion subject to the following conditions:

20       Particularly in light of the lessons the Court learned

21  in Garlock, it would be appropriate to order the production of

22  information from the trusts be anonymized by Bates White after

23  it is produced, as Judge Whitley ordered in the confirmation

24  phase of the Garlock case.

25       With respect to the matching protocol, the Court will

1    require the debtor to provide the trusts with a full Social

2    Security number, plus another identifier.  I understood

3    Mr. Cassada to suggest last name and Mr. Rubinstein seemed to

4    be in agreement with that.  So I will require Social, full

5    Social Security number and last name to be used for the

6    matching protocol.

7           The debtor will be limited to using the data for

8    purposes of estimation and confirmation in this case.

9           And finally, I agree with Mr. Rubinstein that access

10   should be limited to people who have a clear need to know.

11          Again, I grant the motion subject to the concession

12   agreed to by the debtor, that if they get matches from the

13   trusts for *pro se* claimants, that those matches will be

14   excluded from the discovery or not viewed as having Bestwall

15   claims as well as subject to the agreement reached between

16   Mr. Cassada and Mr. Rubinstein regarding the merged database

17   and its confidential treatment as well as the date certain for

18   the deletion of trust data.

19          Now I'll turn to the shaping motions and I'll make

20   just a few general comments about those motions before I rule

21   on each specific motion.

22          With respect to estimation, I remain focused on the

23   need to avoid undue delay utilizing estimation as an

24   opportunity to advance the resolution of this case and due

25   process.  In the context of reminding me about the factors on

1   which I focused when ordering estimation, Mr. Harron suggested

2   that given the way this case ended up in bankruptcy and the

3   path the debtor has chosen versus the claimants who had no

4   choice in this process, that the equities weigh in favor of the

5   claimants and I don't necessarily disagree with that statement.

6   However, he also suggested that due process weighs in favor of

7   the claimants and while that may be true regarding the

8   equities, I think I've stuck pretty firmly to the notion that

9   all parties are entitled to due process in this and any

10  proceeding in this court.

11          In that regard, I've concluded that I should deny the

12  shaping motions because to grant any of the four motions would

13  significantly disadvantage the debtor as it proceeds to

14  estimation, whether that pertains to presenting its case

15  regarding the debtor's asbestos liability or defending the case

16  presented by the ACC and the FCR.  I believe it is necessary to

17  allow the parties to conduct discovery so they can present

18  their case and their evidence which the Court can evaluate so

19  that it can then make an informed decision at the estimation

20  hearing and, ultimately, so that the parties and the Court can

21  make an informed decision about a plan of reorganization.  To

22  grant any of the shaping motions at this point would also be

23  premature, but as Mr. Gordon suggested, with the exception of

24  the group settlement motion, it would be appropriate to deny

25  the other three shaping motions without prejudice to those

1    motions being raised through <u>Daubert</u> motions or motions *in*

2    *limine*.   Admittedly, it is appealing to grant the shaping

3    motions to the extent it would help ensure that we reach an

4    estimation hearing in the first quarter of 2022, but the ACC

5    and the FCR have not said anything to convince me that we can't

6    reach that goal without granting their motion and that remains

7    my intention.

8            So with respect to the motion to establish a

9    methodology for estimating the debtor's joint compound

10   liabilities, there's no basis for the Court to grant the ACC's

11   methodology motion or make any determination about the validity

12   or merit of either the debtor's legal liability methodology or

13   the ACC's settlement methodology at this point.   While the ACC

14   cited cases where courts have concluded that the settlement

15   methodology is more reliable and made an estimation decision

16   accordingly, no court, to my knowledge, has ruled at this early

17   stage of estimation that it would be appropriate to prevent one

18   side or the other from presenting their theory for estimating a

19   debtor's asbestos liability in the case.

20           It was most telling to me to learn that when the ACC

21   filed a similar motion in the <u>Specialty Products</u> case, that

22   they withdrew the motion before it came on for hearing based on

23   Judge Fitzgerald's comments about the motion.   As Judge Hodges

24   said in granting the debtor's estimation motion in the <u>Garlock</u>

25   case -- and I am loath to quote Judge Hodges for fear one side

1    or the other will draw conclusions from that, which I strongly

2    suggest you shouldn't -- but I think he was dead on in <u>Garlock</u>

3    when he said that the settlement approach and the legal

4    liability approach to estimation are not matters of law, but,

5    rather, matters of evidence.  The Court will hear such evidence

6    as is appropriate relating to each approach and will make its

7    decision upon which is more persuasive.  He also noted that,

8    "No court has held that the analysis of the debtor's claims

9    resolution history is the exclusive means to estimate

10   liability.  In fact, courts in prior cases have analyzed the

11   merits of claims at estimation."  Similarly, in the <u>G-1</u>

12   <u>Holdings</u> case Judge Gambardella determined that it was

13   appropriate to allow both sides to make their case.

14          I agree with those courts and conclude for the same

15   reasons I should deny the ACC's methodology motion without

16   prejudice to that motion being raised as a pre-trial motion.

17          With respect to the motion to exclude the use of

18   medical science evidence in the estimation proceeding, in

19   reviewing the transcript and the arguments made regarding this

20   motion it underscored for me that there was some confusion

21   surrounding the exact relief being sought by the ACC in that

22   motion.  Ms. Ramsey clarified on the record that the motion

23   seeks to prohibit the debtor from presenting evidence regarding

24   the chrysotile defense.  The debtor argued that this relief is

25   unprecedented and that medical science evidence has been

1   presented in every asbestos estimation to date and Mr. Gordon

2   confirmed that the debtor will not seek to have this Court

3   determine whether or not chrysotile-containing joint compound

4   causes mesothelioma, but to provide the Court the necessary

5   background on medical science issues to put context around the

6   determination of the debtor's estimated asbestos liability.

7           Again, it's telling that the ACC filed a similar

8   motion in the Specialty Products case and as with the

9   methodology motion based on Judge Fitzgerald's comments about

10  the science that she said was obviously involved in estimating

11  asbestos claims, the ACC withdrew its motion.  Like the

12  methodology motion, I conclude that the debtor should have the

13  opportunity to present its medical science evidence.  The ACC

14  will have the same opportunity and the Court will make a well-

15  informed decision about the medical science issues after

16  hearing from both sides.

17          In his argument to the Court, Mr. Ruckdeschel

18  indicated that it would take the plaintiff four or five days to

19  put on a full science trial for the Court and that there would

20  be multipliers of that spent in pre-trial preparation.  In

21  response to that, I would suggest to the parties that we won't

22  have sufficient time in this estimation hearing for one party

23  to spend four or five days on the medical science issue alone.

24  So while I won't grant the medical science motion, I would urge

25  you to take that into consideration when conducting any

1   discovery related to the medical science issues and preparing

2   for the estimation hearing.

3          I'll move on to the motion to fix the scope of the

4   look-back period for estimation of the debtor's asbestos

5   liabilities.

6          As with the medical science motion, the exact relief

7   sought by this motion was unclear, which, again, was evidenced

8   by reviewing the transcript from the hearing.  And while I

9   understand some of the logic behind the motion, imposing a

10  five-year look-back period on the discovery conducted by the

11  debtor is simply arbitrary, particularly in light of its 40-

12  year history litigating asbestos claims in the tort system.

13  Even Dr. Peterson acknowledged in his deposition that he has

14  not yet determined what calibration period he will use in this

15  case.

16         So it would not be appropriate to impose an arbitrary

17  five-year look-back period on the debtor and it was not

18  sufficiently explained to me what the consequences could or

19  would be of granting this motion as it relates to the debtor's

20  ability to pursue its methodology or defend against the ACC's.

21  In other words, because I don't understand the potential

22  implications of granting the motion and I'm not entirely

23  convinced the parties do either, I'm compelled to deny the

24  motion.

25         In addition, Dr. Bates has testified that he needs

1    discovery going beyond the five-year period in order to, among

2    other things, test his theory that settlements are not a

3    reliable measure of Bestwall's liability for asbestos claims

4    and to better understand the settlements over the course of

5    Georgia-Pacific's litigation history.  Therefore, to grant the

6    look-back motion would hamstring the debtor's defense to the

7    ACC's theory of liability.

8            So for all of those reasons, I'll deny the ACC's look-

9    back motion, again without prejudice.

10           Lastly, with respect to the motion to exclude the

11   requested discovery on the claimants participating in group

12   settlements, I've already concluded that I should grant the

13   debtor's trust motion.  The ACC argues I should exclude from

14   that discovery claims that were settled pursuant to a group

15   settlement because those claims were settled without

16   considering the claimants' exposures to other asbestos

17   products.  However, the ACC has put the group settlements at

18   issue by virtue of its settlement methodology and Dr. Bates has

19   testified that he needs the information to test and rebut the

20   ACC's settlement methodology.  So it would prejudice the debtor

21   in its ability to present its defense to the ACC's case.  At

22   the same time, allowing the discovery does not create any

23   prejudice or burden for the ACC or the FCR because neither the

24   current nor future claimants are the subject of the requested

25   discovery.

1          For those reasons, I conclude I should deny the group

2    settlements motion.  Because it's in the nature of a discovery

3    motion, I will deny this motion with prejudice.

4          So, Mr. Gordon, that's the conclusion of my rulings on

5    the motions that the Court heard on January 21st and 22nd.  And

6    so with that, I would ask the debtors to draw orders consistent

7    with the Court's ruling and circulate those orders by the

8    necessary parties and then upload those orders for the Court's

9    consideration.

10          And I believe, folks, that that leaves us with, at

11   least according to my calendar, two other matters for the

12   Court's consideration today.  And let's see.  In looking at the

13   calendar, Mr. Gordon, we still have the seventh continued

14   hearing on the motion for an order authorizing and directing

15   the production of documents.

16          And the other matter that I show on my calendar, which

17   I understand may not be on the agenda that was filed with the

18   Court, is the third continued hearing on the motion to file

19   confidential documents under seal.

20          MR. GORDON:  Thank you, your Honor.  Greg Gordon on

21   behalf of the debtor.

22          With respect to, I, I think it's Agenda Item No. 2,

23   the 2004 -- oh, I'm sorry.  That's the wrong one -- the 2004

24   motion that was directed primarily to New GP.  I think that's

25   what you were referring to among the two.  Let me give a report

1    on that.  I actually thought that was set for the next hearing,

2    but I can give a status.

3         That's, that's a, a set of discovery requests that

4    were made some time ago.  We've worked with New Georgia-Pacific

5    to provide responses to those requests.  Most recently, there

6    was a further request for information that is being worked on

7    and the response to that will be provided shortly.

8         But that's a matter that's been carried for a number

9    of months.  I think from the perspective of the debtor and New

10   GP we believe that it's pretty much been dealt with, but the

11   other side should respond.  In other words, I'm not sure

12   there's a need to carry the hearing on that any further.  My

13   understanding from the status is that it's basically fully

14   resolved other than that last remaining item, which we'll

15   produce documents in response to shortly.

16        THE COURT:  Okay.  And I, I will note I, I had been

17   told that this matter on the agenda that was filed prior to the

18   February hearings was noted as continued to March 18th.  But

19   the, I don't believe that that --

20        MR. GORDON:  Right.

21        THE COURT:  -- is reflected on the agenda that was

22   filed for today's hearing.

23        Ms. Ramsey, what are your thoughts about this motion

24   for the order authorizing and directing the production of

25   documents?

1          MS. RAMSEY:  Your Honor, we had understood that it was

2     continued until March 18th.

3          THE COURT:  Okay.

4          MS. RAMSEY:  And so we do believe that there is still

5     dialogue going on regarding that motion.  We're hopeful that it

6     will resolve before the next hearing, but we would like to

7     continue it for the March 18th hearing.

8          THE COURT:  Okay.  All right.

9          And so for purposes of the record we'll note that that

10    motion is continued until March 18th.

11         And then that leaves us, also, with the third

12    continued hearing on the motion to file confidential documents

13    under seal.

14         MR. GORDON:  And, your Honor, it's Greg Gordon, again.

15         I think Mr. Wright can address that.  My understanding

16    is that's fully resolved, but Mr. Wright, I'm sure, has an

17    update on that.

18         THE COURT:  Okay.

19         Mr. Wright.

20         MR. WRIGHT:  Good morning, your Honor.

21         THE COURT:  Good morning.

22         MR. WRIGHT:  Davis Wright from Robinson & Cole on

23    behalf of the Committee.

24         Yes, your Honor.  We have resolved that motion.  We

25    had a, a further meet and confer last night to address it, but

1  we -- we are -- have agreed that one of the additional

2  paragraphs that the debtors requested in one of the settlement

3  agreements can be unredacted.

4         So we are going to provide the Court with an amended

5  exhibit that removes the redaction on that additional

6  paragraph.  It was the -- for your Honor's information, it was

7  the request that Mr. Cassada made at the end of the hearing

8  under Federal Rule of Evidence 106 so that it was a full record

9  and that it was a provision that he had cited to in his

10 presentation.

11        So we agree with that.

12        THE COURT:  Okay.

13        MR. WRIGHT:  And I believe, your Honor, that that

14 resolves the motion.

15        THE COURT:  Okay, very good.

16        Then on that basis and again for purposes of the

17 record, we will treat that matter as resolved.

18        Thank you for that announcement, Mr. Wright.

19        I think, according to the calendar that I have and

20 without looking through the agenda, I guess I'll ask

21 Mr. Gordon.

22        I believe that that takes care of the matters that are

23 on for hearing today.  I did have a couple of housekeeping

24 matters that I wanted to mention.

25        And I know it is your practice to offer the Court sort

1    of a status.  I didn't know if it was your intention to do that

2    today or not.

3              MR. GORDON:  I do have some thoughts to share on

4    status, your Honor, but otherwise, we agree that all matters

5    that were set for today, I think, have now been addressed.

6              THE COURT:  Okay.  All right.  Well, I will hear from

7    you then with respect to a status and then I, after you all

8    have updated me, I will conclude just by mentioning a few

9    housekeeping matters.

10             MR. GORDON:  Thank you, your Honor.

11             So as indicated by Mr. Wright, we did have a meet and

12   confer last night and we've had some other meet and confers, in

13   part, relating to estimation, but obviously, we've been waiting

14   for the rulings as well which obviously form the process

15   somewhat or be informative to the process somewhat going

16   forward.

17             So the -- I, I think the item at the top of the list

18   I'd like to mention is the case management order and that's

19   been, we had provided the draft some time ago to the Committee

20   and the Future Claimants' Representative.  They'd indicated to

21   us that they wanted to defer their response or comments to that

22   until the Court ruled and we understand that.

23             But we, what we would like to suggest in order to move

24   that forward in light of the Court's rulings, that we set a

25   status conference on that case management order for the March

1   18 hearing, which I think will motivate the parties to have

2   meet and confers and share comments and, hopefully, come up

3   with a finalized case management order that's been agreed to by

4   that hearing.  And to the extent we have any issues or

5   disputes, I would ask that your Honor entertain those at the

6   March 18th hearing so that we can have an order that we can,

7   that will govern the process and we can begin to, to move

8   forward.

9          I will say that the parties haven't been totally

10  static with respect to estimation.  We have shared comments

11  with each other on an ESI protocol which would govern

12  electronic discovery during the estimation process and that's

13  something as well that we would -- my proposal would be that we

14  have further meet and confers on that prior to the March 18th

15  hearing with a goal of presenting that protocol to the Court on

16  the 18th in an agreed form and if there are any issues, that we

17  ask the Court for some guidance.

18         I will say, however, that we have negotiated an ES,

19  that we've successfully negotiated an ESI protocol in the DBMP

20  case and I think, I think as well in Aldrich, although I'm not

21  as up to speed on Aldrich.  So I don't -- the reason I say that

22  is I don't anticipate we're going to have any issues in coming

23  to a, to a consensus on that.

24         And otherwise, I think we're all just going to turn

25  our attention to estimation and, hopefully, be back to you on

1   the 18th, if your Honor will hear us then, with a, an agreed

2   process for moving forward to an estimation hearing in the

3   first quarter of 2022.

4           THE COURT:   Okay.

5           All right.   Ms. Ramsey, I'll let you respond.

6           MR. GORDON:   Thank you.

7           MS. RAMSEY:   Thank you, your Honor.

8           I don't really have anything to add.   I think

9   Mr. Gordon summed up well where we are.   And, and I agree that

10  a status conference on the CMO at the next hearing would be a

11  good idea.

12          THE COURT:   Okay.   All right, very good.

13          MS. RAMSEY:   Thank you.

14          THE COURT:   Thank you.

15          So Mr. Harron.

16          MR. HARRON:   Your Honor, I only popped up to say we

17  have nothing to add.   We appreciate the Court's guidance and

18  we'll see you in a few weeks.

19          THE COURT:   Okay.   Yeah, that will be here, gosh,

20  before we know it.   That's two weeks from now.

21          So with respect to housekeeping matters, I just wanted

22  to mention a couple of things, folks.   We do have a hearing

23  that is scheduled for April 22nd.   I think it was mentioned to

24  you all in an e-mail that our court is moving on April, well,

25  the whole court, the bankruptcy court will be moving that

1   entire week.  The judges and their staff will be moving the

2   19th and the 20th and then the clerk's office is really, will

3   be moving the remainder of that week.  Needless to say, there

4   will be a lot of settling in that needs to be done.

5          I have been asked, we have been asked not to hold

6   court that week.  I will tell you that I'm going to hold -- the

7   hearing date that, that we have is reserved and if we need to

8   have a hearing on April 22nd, you know, I'm not going to tell

9   you that we can't do that.  It -- it may create -- we might not

10  be in our best form that day and we might, things might be a

11  little hairy around here.

12         So if it's, you know, if there's an emergency that

13  comes up and we need to have a hearing on April 22nd, we can.

14  We will try to accommodate you.  So I just wanted to share that

15  with you.

16         The other thing I would note -- and I believe

17  Mr. Miller knows this because he is involved in our Planning

18  Committee for our Western District Seminar -- but our Zoom

19  license expires at the end of May.  And so we will -- or maybe

20  the beginning of May, May 1st.

21         Mr. Lamb as corrected me.  It expires on May 1st.

22         So the Court will convert to the use of Teams at the

23  beginning of May and that will become the new platform we use

24  for all of our virtual hearings.  We anticipate posting

25  instructions about switching to Teams and instructions for, you

1   know, how you can download Teams or get connected or do

2   whatever you need to do.  Mr. Lamb has assured me that he can

3   guide you and, and, and as you all know well through your

4   connections and communications with Mr. Lamb, if you have

5   questions about that as we approach that May date, please feel

6   free to reach out to him.  I know that he'd be willing to do a

7   test run by Teams if, if that would allay any concerns that you

8   have about that conversion.  But that is an AO-supported

9   software for which we don't have to pay and we do have to pay

10  for Zoom.

11           So that is a conversion that we will be making and

12  just wanted to let you all know that as soon as possible so

13  that you can start to plan, accordingly.

14           And those are the matters that the Court wanted to

15  address as far as housekeeping matters.

16           And with that, unless anybody has any questions, I

17  believe that that takes care of the matters that are on the

18  calendar today.

19           I see Mr. Gordon has popped into the screen.  I don't

20  know if that's just to say goodbye or because he has questions.

21           MR. GORDON:  I felt bad.  You seemed all alone.

22           THE COURT:  Yeah.  I do -- it is -- it is --

23           MR. GORDON:  Just kidding.

24           THE COURT:  Well, the other thing I should say, by the

25  way, is I don't know where you all stand on this, but I was

1   able to schedule my first vaccine shot for next Wednesday.  I

2   hope that as your states start to introduce those shots, if

3   you're willing, that you'll consider getting yours.  We would

4   like to start seeing some of you folks back in the courtroom as

5   things start to open back up and my hope is that, you know,

6   certainly by the summer that it might be possible for y'all to,

7   to come back to Charlotte and that we can conduct some of these

8   hearings in person.

9         So I know that I'm going to take the appropriate steps

10   so that I can be prepared for that and I hope y'all will

11   consider doing the same thing.

12         So with that, the Court will recess and we will see

13   you back in two weeks from today.

14         Thank you.

15         MR. GORDON:  Thank you.

16         MR. HARRON:  Sounds good, your Honor.

17     (Proceedings concluded at 10:12 a.m.)

18

19

20

21

22

23

24

25

1                     <u>CERTIFICATE</u>

2        I, court approved transcriber, certify that the

3  foregoing is a correct transcript from the official electronic

4  sound recording of the proceedings in the above-entitled

5  matter.

6  /s/ *Janice Russell*               March 5, 2021

7  Janice Russell, Transcriber          Date