# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Case No. 1:21-mc-00141-CFC |
| BESTWALL LLC, | Underlying Case No. 17-BK-31795 (LTB) |
|         Debtor. | (U.S. Bankruptcy Court for the Western District of North Carolina) |

## BESTWALL LLC'S OPPOSITION TO MOTION OF THIRD PARTY ASBESTOS TRUSTS TO QUASH OR MODIFY SUBPOENAS

Dated: May 3, 2021

Chad S.C. Stover (No. 4919)
**BARNES & THORNBURG LLP**
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
E-mail: chad.stover@btlaw.com

Garland S. Cassada (*pro hac vice*)
Stuart L. Pratt (*pro hac vice*)
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
Tel: (704) 377-2536
E-mail: GCassada@robinsonbradshaw.com
E-mail: SPratt@robinsonbradshaw.com

*Attorneys for Bestwall LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... ii

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

STATEMENT OF FACTS ........................................................................ 3

      A.    The Bestwall Bankruptcy Case .................................................. 3

      B.    The Trust Motion ................................................................. 4

      C.    The Bankruptcy Court's Approval of the Trust Motion
             and Authorization of Discovery ................................................ 5

      D.    The Estimation Proceeding ..................................................... 6

ARGUMENT ..................................................................................... 7

    I.    The Motion Should Be Denied Because the DCPF Trusts Are
         Bound by the Trust Order ........................................................ 8

    II.    Alternatively, the Motion Fails on the Merits ................................ 10

      A.    The Requested Trust Data Are Relevant and Necessary to
             the Bankruptcy Case ........................................................... 10

           1.    The Trust Order is consistent with other courts'
                approval of discovery from asbestos trusts ................... 12

           2.    Bestwall has reason to believe material exposure
                evidence was not disclosed in significant resolved
                cases ............................................................... 13

      B.    The Trust Order Properly Addresses the DCPF Trusts'
             Confidentiality and Privacy Concerns ...................................... 14

      C.    Sampling the Trust Data Is Unwarranted and Would
             Hinder Bestwall's Estimation Case ......................................... 17

      D.    Anonymizing the Trust Data Before Production Would
             Defeat a Central Purpose of the Discovery ................................ 20

CONCLUSION ................................................................................. 22

CERTIFICATE OF COMPLIANCE ......................................................... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885 (S.D.N.Y. Dec. 3, 2012) ................................................................ 18, 19

*In re Ecam Publications, Inc.*, 131 B.R. 556 (Bankr. S.D.N.Y. 1991) .................. 7

*In re Garlock Sealing Techs. LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014) ........................................................................................................... 11, 12, 19

*In re Schaefer*, 331 F.R.D. 603 (W.D. Pa. 2019) ...................................................... 8

*In re Symington*, 209 B.R. 678 (Bankr. D. Md. 1997) ............................................. 7

*In re Wash. Mut., Inc.*, 408 B.R. 45 (Bankr. D. Del. 2009) ..................................... 7

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988) ................... 8

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ................... 8

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, 2012 WL 628493 (D. Md. Feb. 24, 2012) .............................................. 13, 15, 19

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ........................ 8

*Willis v. Buffalo Pumps, Inc.*, 2014 WL 2458247 (S.D. Cal. June 2, 2014) ............................................................................................................... 15

**Rules**

Fed. R. Bankr. P. 2004(a) ........................................................................................ 7

Fed. R. Bankr. P. 2004(b) ........................................................................................ 7

Fed. R. Bankr. P. 2004(c) ........................................................................................ 8

Bestwall LLC ("Bestwall"), the debtor and debtor in possession in a chapter 11 case pending in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court"), submits this opposition to the Motion of Third Party Asbestos Trusts to Quash or Modify Subpoenas (Del. D.I. 1) (the "Motion") filed in this action by nine asbestos trusts and later joined (Del. D.I. 3) by a tenth asbestos trust (collectively, the "DCPF Trusts").

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Motion seeks to avoid the production of limited data relating to claims filed with the DCPF Trusts by individuals whose mesothelioma claims Bestwall or its predecessor, the former Georgia-Pacific, LLC ("Old GP"), resolved through settlement or verdict (the "Bestwall Claimants"). The Bankruptcy Court found that these trust data were relevant and necessary to the resolution of Bestwall's chapter 11 case and accordingly ordered their production after months of litigation on notice to the DCPF Trusts. The Delaware Claims Processing Facility ("DCPF"), an entity that serves as the claims administration and processing agent for the DCPF Trusts and has possession of the requested data, was an active participant in that litigation and raised the identical objections to Bestwall's request for the data that the Motion now re-asserts. To protect the privacy of individual claimants, the Bankruptcy Court's order adopted many confidentiality provisions that DCPF proposed. The Bankruptcy Court's order, however, overruled two of DCPF's

objections—that claims data be produced without claimants' identities and be limited to a sample—and authorized the issuance of subpoenas to DCPF and the DCPF Trusts for the data. That order is binding on the DCPF Trusts and their efforts to collaterally attack it in this Court should be rejected.

Even if this Court were considering the subpoenas on a blank slate, however, no basis exists to quash or modify them. Contrary to the DCPF Trusts' unsupported allegations, the requested data are relevant and necessary to proceedings in the Bankruptcy Court to estimate Bestwall's aggregate liability for certain mesothelioma claims. The confidentiality provisions of the DCPF Trusts' trust distribution procedures ("TDP") also do not justify barring the discovery.

As a fallback, the Motion asks this Court to adopt the very revisions to the subpoenas rejected by the Bankruptcy Court: (a) limiting the data to a small sample of Bestwall Claimants and (b) requiring the data be anonymized before production to Bestwall and its experts. The Bankruptcy Court accepted evidence offered by Bestwall that these revisions were unnecessary and would undermine the evidentiary value of the claims data. First, sampling would not materially reduce the costs and burden of discovery (which Bestwall is obligated to reimburse DCPF for), and would unnecessarily create evidentiary issues about the representativeness of the sample and margins of error. Second, anonymization would prevent Bestwall from using the trust data for a key intended purpose—to

2

determine whether individual claimants failed to disclose to Bestwall relevant evidence of alternative exposures.

For all these reasons, and as further described below, this Court should deny the Motion.

## STATEMENT OF FACTS

### A.    The Bestwall Bankruptcy Case

On November 2, 2017, Bestwall commenced a chapter 11 case, No. 17-BK-31795 (LTB) (the "Bankruptcy Case"), in the Bankruptcy Court to permanently and equitably resolve current and future asbestos-related claims through confirmation of a consensual plan of reorganization that establishes a trust to process and pay those claims. (Bankr. D.I. 12)[1]

To date, Bestwall has been unable to reach agreement on a consensual plan with court-appointed representatives for current and future asbestos claimants (together, the "Claimant Representatives"). A major obstacle to a settlement is the parties' divergent views on the extent of Bestwall's liability for current and future asbestos claims. Accordingly, Bestwall filed an "Estimation Motion" asking the

---

[1] This brief references filings on the Bankruptcy Court's docket as "Bankr. D.I" and filings on this Court's docket as "Del. D.I." References to an accompanying appendix of relevant exhibits from the Trust Motion litigation and other sources are cited as "App."

Bankruptcy Court to estimate Bestwall's aggregate liability for certain current and future mesothelioma claims.[2] (Bankr. D.I. 875)

### B. The Trust Motion

On July 30, 2020, while the Estimation Motion was still pending, Bestwall filed a motion (the "Trust Motion") under Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") seeking the data at issue here. (Del. D.I. 1-4) Specifically, through the Trust Motion, Bestwall sought authority to issue a subpoena to DCPF and the Manville Trust to obtain limited data concerning DCPF Trust and Manville Trust filings by the approximately 15,000 Bestwall Claimants. Even though DCPF has possession of all the claims data of the DCPF Trusts that Bestwall seeks, the Trust Motion also requested authority to subpoena the DCPF Trusts if necessary to effectuate the discovery. Trust Motion ¶5 n.8.

Bestwall served the Trust Motion and a related notice of hearing on DCPF and the DCPF Trusts. (Del. D.I. 6-2, 6-3) The motion was exhaustively litigated in the Bankruptcy Court over six months. The Claimant Representatives filed oppositions (Bankr. D.I. 1327, 1328), as did DCPF and the Manville Trust (the "DCPF Objection"). (Del. D.I. 1-5) The DCPF Objection raised the identical issues that the DCPF Trusts raise in the Motion. (Del. D.I. 5) In the months leading up to

---

[2] Claims alleging mesothelioma (a cancer of the lining of the lung) accounted for the bulk of Bestwall's and its predecessor's asbestos-related expenditures before its bankruptcy filing.

the January 2021 hearing and even after the hearing, further briefing on the Trust Motion was submitted. *See* Trust Order (defined below) at 1-2 & n.3 (listing all briefing).

Despite being served with the Trust Motion and all of Bestwall's subsequent briefing on the Trust Motion (Bankr. D.I. 1254, 1362, 1572, 1630), no DCPF Trust appeared to contest the discovery Bestwall requested.

## C.    The Bankruptcy Court's Approval of the Trust Motion and Authorization of Discovery

The Bankruptcy Court heard oral argument on the Trust Motion and other estimation-related motions from January 21-22, 2021. The parties introduced an extensive evidentiary record for the hearing. In her bench ruling six weeks later, Judge Beyer granted the Trust Motion and found that "the information [that Bestwall] sought is both relevant and necessary to the case." (Del. D.I. 1-6) Judge Beyer's ruling, however, acknowledged the confidential nature of the data to be produced, and she ordered a series of restrictions and protocols to be implemented to protect the privacy of the data. *Id.*; *see infra* section II.B. The parties and DCPF conferred and reached agreement on the form of a written order to implement the ruling, which the Bankruptcy Court entered on March 24, 2021 (the "Trust Order"). (Del. D.I. 1-3)

Pursuant to the Trust Order, Bestwall served subpoenas on DCPF and the DCPF Trusts on April 2 and April 5, 2021 by personal service or acceptance of

service by counsel.[3] (Del. D.I. 6-10) On April 19, 2021, the DCPF Trusts filed the Motion in this Court seeking to quash or modify the subpoenas. Later that day, DCPF assured the Bankruptcy Court that it intended to comply with its obligations under the Trust Order, subject to seeking further guidance from the Bankruptcy Court if a conflicting order was entered on the Motion. (Del. D.I. 6-1) On April 23, 2021, Bestwall moved this Court to transfer proceedings on the Motion to the Bankruptcy Court. That motion remains pending in this Court.

### D.    The Estimation Proceeding

While the parties were litigating the Trust Motion, the Bankruptcy Court held a further hearing on the Estimation Motion and later entered an order granting that motion on January 19, 2021. (Bankr. D.I. 1577) On March 31, 2021, the Bankruptcy Court entered an agreed case management order for the estimation proceedings, which establishes an aggressive discovery and pretrial schedule ahead of an estimation trial to be held in May 2022. (Del. D.I. 6-12, 6-13) Bestwall has emphasized for months that the information it seeks through the Trust Motion is crucial to its ability to prepare its case and is a critical gating item as the parties prepare for the estimation trial. (Del. D.I. 6-11) Bestwall needs the subpoenaed data to meet numerous deadlines in the estimation case management order,

---

[3] The DCPF Trusts appear to concede in a recent filing that service of the subpoenas was proper, contrary to their argument in footnote 10 of the Motion. (Del. D.I. 9 at ¶3)

including a September 30, 2021 fact discovery deadline and a November 24, 2021 deadline for serving initial expert reports.

## ARGUMENT

The Bankruptcy Court entered the Trust Order under Bankruptcy Rule 2004. That rule is the "basic discovery device used [in] bankruptcy cases." *In re Symington*, 209 B.R. 678, 683-84 (Bankr. D. Md. 1997) (quotation omitted). The rule provides that a court may order the examination of "any entity" on motion of a party in interest. Fed. R. Bankr. P. 2004(a). A party may seek discovery related to, among other topics, the "liabilities . . . of the debtor," "any matter which may affect the administration of the debtor's estate," and, in a chapter 11 case, "any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

The scope of discovery allowed under Bankruptcy Rule 2004 is "unfettered and broad." *In re Wash. Mut., Inc.*, 408 B.R. 45, 49 (Bankr. D. Del. 2009) (citation omitted). Discovery under Rule 2004 may even be more extensive than permitted under the Federal Rules of Civil Procedure (the "Civil Rules"). *In re Ecam Publications, Inc.*, 131 B.R. 556, 559 (Bankr. S.D.N.Y. 1991).

A party may seek to compel compliance with Bankruptcy Rule 2004 discovery approved by a court by issuing a subpoena under Bankruptcy Rule 9016, which makes Civil Rule 45 applicable in bankruptcy proceedings. Fed. R. Bankr.

P. 2004(c). Under Civil Rule 45, a nonparty opposing a subpoena bears the burden of showing a basis to quash the subpoena, as long as the discovery sought is relevant under Civil Rule 26(b)(1). *In re Schaefer*, 331 F.R.D. 603, 607-08 (W.D. Pa. 2019).

## I.     The Motion Should Be Denied Because the DCPF Trusts Are Bound by the Trust Order

This Court should deny the Motion because the DCPF Trusts were on notice of the Trust Motion since its filing and are bound by the Trust Order granting that motion. Persons affected by court orders are bound so long as they received due process, and "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) (holding that a distributor was bound by a bankruptcy court's order approving an insurance settlement and enjoining the distributor from suing its insurer where notice of proposed settlement met requirements of due process).

Contrary to allegations in the Motion, Bestwall served the Trust Motion and a related notice of hearing on the DCPF Trusts. (Del. D.I. 6-2, 6-3) Despite being on notice of the Motion, the DCPF Trusts chose to remain on the sidelines—never

8

appearing in the Bankruptcy Court or raising objections. Instead, they deferred to DCPF to object to the Trust Motion and protect their interests.

As further explained in Bestwall's opening brief on its transfer motion, the Motion raises identical objections to those raised by DCPF in the Bankruptcy Court. (Del. D.I. 5) The extensive evidentiary record enabled the Bankruptcy Court to carefully consider—and overrule—the exact objections the DCPF Trusts present in the Motion. DCPF, the claims processing agent for the DCPF Trusts, has assured the Bankruptcy Court that it intends to comply with its obligations under the Trust Order and produce the claims data, so long as no conflicting order is entered on the Motion. (Del. D.I. 6-1)

Remarkably, in the *Motors Liquidation* bankruptcy in New York, the DCPF Trusts repudiated the exact strategy they employ here.[4] In that case, the bankruptcy court granted a motion, over the objections of DCPF and the DCPF Trusts, for Bankruptcy Rule 2004 discovery of the trusts' data for use in estimating aggregate asbestos liabilities. App. 805-12. At a hearing on the motion, Judge Gerber asked if the DCPF Trusts would "collaterally attack" his order in Delaware if subpoenas for the data were served, emphasizing that such a tactic would be a matter of "material concern" to him. App. 910. Counsel for the DCPF Trusts assured Judge Gerber

---

[4] A few DCPF Trusts had not been created at the time of the *Motors Liquidation* case. App. 908-09.

that they would not challenge the subpoenas in Delaware because "[w]e think that you're the judge who we should be making this argument to. . . . So our expectation, while the subpoena nonetheless has to issue in Delaware or in Texas, is that today is our day to make our case to Your Honor." App. 912-13.

After being served with the Trust Motion, foregoing their opportunity to separately "make their case" on the Trust Motion, and deferring to their agent DCPF to raise these same and other objections, the DCPF Trusts are bound by the Trust Order. Their efforts to collaterally attack that order through a "second bite at the apple" should be denied.

## II.   Alternatively, the Motion Fails on the Merits

### A.   The Requested Trust Data Are Relevant and Necessary to the Bankruptcy Case

Through the subpoenas authorized by the Bankruptcy Court, Bestwall seeks the following data for Bestwall Claimants who filed claims with a DCPF Trust:

a.   Claimant identifying information;[5]
b.   Date claim filed;
c.   Date claim approved, if approved;
d.   Date claim paid, if paid;
e.   If not approved or paid, status of the claim;
f.   All exposure-related fields, including:

---

[5] Claimant identifying information is comprised of the full name of the injured party; the injured party's Social Security number, gender, date of birth, date of death, state of residency, date of diagnosis, and body site (if available); the full name of any claimant who is not the injured party and his or her Social Security number; and claimant's law firm, jurisdiction of tort claim filing, and date of tort claim filing.

     i.  Date(s) exposure(s) began;
    ii.  Date(s) exposure(s) ended;
   iii.  Manner of exposure;
   iv.  Occupation and industry when exposed; and
    v.  Products to which exposed;

g.    Mode of review selected; and

h.    Mode of review under which claim was approved and paid.

These data is needed, among other purposes, to determine the extent to which Bestwall Claimants failed to disclose in tort litigation relevant evidence of exposure to the products of bankrupt asbestos defendants—evidence that was used to assert Trust claims. Trust Motion ¶¶11-18. The Bankruptcy Court ordered similar discovery of DCPF Trust claims data for approximately 11,000 claimants in the *Garlock* asbestos bankruptcy case. App. 54-68. Based on evidence from that discovery and other discovery, the *Garlock* court concluded that "almost *half* of [asbestos claims that Garlock settled at high values during the relevant period] involved misrepresentation of exposure evidence." *In re Garlock Sealing Techs. LLC*, 504 B.R. 71, 86 (Bankr. W.D.N.C. 2014) (emphasis in original); *see also* App. 69-76 (*Garlock* estimation-trial exhibit summarizing hundreds of cases where exposure evidence was not disclosed).

If these same practices were prevalent in claims against Bestwall, then, as the Bankruptcy Court found in the *Garlock* bankruptcy case, Bestwall's historical settlements would be "useless" in estimating Bestwall's liability for current and future mesothelioma claims because they would be "infected by the manipulation

of exposure evidence." *Garlock*, 504 B.R. at 82, 94. This is a significant issue in the Bankruptcy Case because the Claimant Representatives contend that Bestwall's asbestos liability should be measured by its (and Old GP's) historical settlements of asbestos claims. (Bankr. D.I. 936, 939)

The DCPF Trusts admit that the Bankruptcy Court concluded that the requested Trust data are "relevant and necessary to [Bestwall's] bankruptcy case," Motion ¶13—satisfying the "relevance" standard of Bankruptcy Rule 2004. Yet, the DCPF Trusts inconsistently seek to bar the discovery based on their unsupported allegation that "[t]here is no need for Bestwall to obtain the confidential data of up to 15,000 Trust Claimants." *Id.* ¶26. The Bankruptcy Court's ruling was correct, as discussed herein.

### 1. The Trust Order is consistent with other courts' approval of discovery from asbestos trusts

The issue of plaintiffs in asbestos litigation failing to disclose material evidence concerning their asbestos exposures is an increasingly important one, which has drawn the attention of courts, legislatures, and the federal government. *See* Bankr. D.I. 1557 at ¶¶7-13, 17-18 (United States' statement of interest in support of Trust Motion). When the issue has become relevant in litigation, courts like in *Garlock* have recognized that discovery from asbestos trusts is proper to determine the extent to which exposure evidence was not disclosed in tort litigation. *See, e.g.*, Memorandum Opinion, *Congoleum Corp. v. ACE Am. Ins. Co.*,

No. 09M-01-084 (Del. Super. Ct. Aug. 4, 2009) (App. 80-81, 92) (ordering trust discovery for approximately 70,000 claimants); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Porter Hayden Co.*, 2012 WL 628493, at *1 (D. Md. Feb. 24, 2012).

The Trust Order is also consistent with other bankruptcy court rulings, including two from this district in the *W.R. Grace* and *Specialty Products* bankruptcies, that discovery from asbestos trusts is proper when they possess evidence relevant to a pending bankruptcy case. App. 797-846.

### 2. Bestwall has reason to believe material exposure evidence was not disclosed in significant resolved cases

Bestwall needs discovery to test the Claimant Representatives' core premise that historical settlements should be used to measure its current and future asbestos liability. Here, Bestwall has good reason to believe it (and Old GP) was subjected to the same pattern and practice of evidence manipulation found in *Garlock*. Using the *Garlock* public record, Bestwall presented evidence of eight illustrative examples of these practices in support of the Trust Motion.[6] This evidence came from resolved asbestos cases, in which the plaintiff's account of his or her exposures to asbestos in asbestos-trust and other bankruptcy filings conflicted with their statements to Bestwall or Old GP in the tort system. After considering this

---

[6] This evidence is summarized in paragraphs of 25-33 of the Trust Motion and included in the accompanying appendix to this opposition.

evidence, Judge Beyer concluded in her bench ruling on the Trust Motion that she was "sufficiently convinced . . . that there's a good faith basis for the trust discovery [Bestwall] seeks." (Del. D.I. 1-6)

Although Bestwall has knowledge of the eight examples of non-disclosure described in the Trust Motion, these examples are insufficient alone to demonstrate the scope of non-disclosure. Bestwall needs the broad-based discovery approved in the Trust Order to analyze and determine, through the estimation proceeding, the extent to which this behavior occurred and its impact.

## B.   The Trust Order Properly Addresses the DCPF Trusts' Confidentiality and Privacy Concerns

In this Court, the DCPF Trusts have portrayed the subpoenas as requiring production of the Bestwall Claimants' "complete" Trust data and "extraordinarily sensitive claims files." Motion ¶¶15-16. Because of confidentiality provisions in the TDP for each DCPF Trust and concerns about aggregating the requested data, the Motion seeks to entirely bar the production. Each of these contentions is wrong.

*First*, the Trust Order and subpoenas require production of limited electronic data—not complete "claims files" submitted by Bestwall Claimants. Motion ¶¶15-16. While the Bankruptcy Court acknowledged DCPF's concerns about the sensitive nature of the requested data, it bears noting that all, or almost all, of the data are routinely disclosed in the litigation of asbestos claims in the tort system.

14

*E.g.*, App 847-872 (example of asbestos claimant's publicly filed complaint). Further, the requested data do not include medical information beyond the disease claimed (including body site) and diagnosis date, neither of which is sensitive.

*Second*, the confidentiality provisions of the DCPF Trusts' TDP do not justify quashing the subpoenas, and the Motion cites no case law to the contrary.[7] In fact, one case cited in the Motion plainly rejects the DCPF Trusts' argument on this ground. *Nat'l Union*, 2012 WL 628493, at *2 (overruling objections to subpoenas for asbestos trust data based on confidentiality provisions of trusts' TDP). Other courts have held similarly. *E.g.*, *Willis v. Buffalo Pumps, Inc.*, 2014 WL 2458247, at *1 (S.D. Cal. June 2, 2014) ("Federal and state courts have routinely held that claims submitted to asbestos bankruptcy trusts are discoverable."); App. 805-12, 914-15. (*Motors Liquidation* order granting discovery over DCPF Trusts' objection based on TDP's confidentiality provisions).

*Third*, the Trust Order's stringent protections for the storage and use of the requested data more than address any concerns about data aggregation. Incorporating several of DCPF's proposals, the Trust Order includes stricter security protocols than the Bankruptcy Court previously imposed when it approved

---

[7] The cases that the Motion does cite in which courts quashed or denied enforcement of subpoenas are distinguishable because they are all premised on a court finding that the discovery was not relevant or necessary.

Garlock's similar requests for aggregate claims data from the DCPF Trusts and the Manville Trust. App. 55-64, 760-76. One key safeguard in the Trust Order requires Bestwall's estimation experts at Bates White, LLC ("Bates White") to (a) assign a unique identifier number for each Bestwall Claimant included in the produced data, (b) permanently delete personal identifying information ("PII") from that data, (c) store the PII and unique identifier in a "Matching Key" file in a separate, password-protected folder, and (d) attest to the completion of these actions in a declaration served on the parties. Trust Order ¶9(c). The Bankruptcy Court's adoption of this "post-production" anonymization process will ensure no PII is stored in the same file as the substantive claims data, while preserving Bestwall's ability to do claim-by-claim analysis of the Trust data. During the litigation of the Trust Motion, DCPF argued for this protection as a fallback to its preferred "pre-production anonymization" approach. DCPF Objection ¶¶69-73.

On top of this anonymization protocol, the Trust Order includes, among other protections:

- A prohibition against dissemination or disclosure of the requested data to any person other than certain "Authorized Representatives" of the parties that have a "clear need to know" the information to perform work regarding certain "Permitted Purposes." *Id.* ¶10(a).

- A requirement that each entity or person with access to the requested data:

    o consent to the exclusive jurisdiction and venue of the Bankruptcy Court for any dispute about interpreting or enforcing the Trust Order; and

- provide for physical, managerial, and electronic security such that the requested data are secure and safe from unauthorized access or use during utilization, transmission, and storage. *Id.* ¶10(b), (c).

- A requirement that any person or entity with access to the requested data certify, within 90 days after the effective date of a confirmed plan for Bestwall or the entry of a final order confirming such a plan, whichever is later, that they have permanently deleted the data.

Together, the Trust Order's data-security provisions appropriately protect the requested data from improper disclosure and ensure that the data will remain confidential.[8]

### C.    Sampling the Trust Data Is Unwarranted and Would Hinder Bestwall's Estimation Case

The DCPF Trusts insist that a sample of the requested Trust data would suffice, Motion ¶27, but sampling would serve no purpose here and would deprive Bestwall and its experts of important information for their estimation analysis and case preparations. As Bestwall's estimation expert, Charles E. Bates, PhD, explained at a deposition, sampling is appropriate when the incremental burden of obtaining information is high. App. 918. That is not the case here, where all the requested data is maintained in database form and DCPF can retrieve and produce the data using simple electronic searches. *See* Del. D.I. 1-7 ¶¶24 (the "Bates

---

[8] Demonstrating the reasonableness of this protocol, DCPF itself stores claims data in an aggregated format that keeps claimants' PII separate from their substantive claims data (Bankr. D.I. 1325 at ¶¶8-10, 15), just as the Trust Order requires Bates White to do.

Declaration"). Moreover, the Trust Order requires Bestwall to reimburse DCPF for its costs in complying with the subpoenas. Trust Order ¶15.

The DCPF Trusts present an incomplete view of the purpose for which Bestwall sought the claims data—focusing only on Bestwall's efforts to investigate the extent of non-disclosure of alternative exposures. Motion ¶¶22-27. While that is a key purpose for seeking the data, the full scope of data is relevant and necessary for other aggregate-level analysis, such as studying the extent to which claimants delayed filing their Trust claims while they litigated against Bestwall (and whether claimants who did so received higher settlement payments) and analyzing the likelihood of success factor and other inputs in Dr. Bates's estimation methodology. *See* Bates Declaration ¶¶22-23.

Moreover, sampling is unwise because it could undercut the probative value of any information that is produced, and introduce disputes regarding analytical errors and the representativeness of the sample. App. 917-18 (Dr. Bates deposition). In fact, the Motion cites a case that illustrates the complex disputes that can arise when a party seeks to introduce evidence based on a sample. *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *7-11 (S.D.N.Y. Dec. 3, 2012). The DCPF Trusts offer no evidence to support their assertion that a 10% sample would be scientifically reliable and sufficient for the full scope of Bates White's estimation analysis. And the fact that Bates White is

capable of working with a statistical sample, *see* Motion ¶25, does not mean that a sample is appropriate here. Dr. Bates testified that it is not. App. 917-18.

The cases that the DCPF Trusts cite do not support their sampling argument. In *Garlock*, the DCPF Trusts were ordered to produce data for thousands of claimants, not a sample of those claimants. App. 54-64. Later in *Garlock*, the Bankruptcy Court rejected a similar sampling proposal from the Manville Trust and ordered the trust to produce data for over 100,000 claimants. App. 760-76. The sample that the DCPF Trusts reference in *Garlock* concerned court-ordered supplemental questionnaires seeking detailed information about exposures and settlement payments, as opposed to easily produced electronic information from a database. *Garlock*, 504 B.R. at 95.

The Motion cites two other cases that are also inapposite. One case addressed a wholly separate issue: whether an expert's sampling methodology to study allegations of misconduct in over 1 million mortgages was admissible. *JPMorgan*, 2012 WL 6000885, at *1. Further, in that case, the court decided *not to restrict discovery* about the mortgages to a sample. *See id.* at *2. In the second case, the parties stipulated to using a 10% random sample. *Nat'l Union*, 2012 WL 628493, at *1. No such stipulation exists or is appropriate here.

In short, sampling will not materially decrease the burden on the DCPF Trusts and will deprive Bestwall and its experts of necessary data for their estimation analysis. No reason exists to modify the subpoena.

### D. Anonymizing the Trust Data Before Production Would Defeat a Central Purpose of the Discovery

If the Court does not entirely quash the subpoenas, the DCPF Trusts propose modifying the subpoenas to require that the claims data be anonymized by DCPF *before* production to Bates White or Bestwall. Motion ¶¶36-37. This proposal is unworkable.

Among other reasons, Bestwall sought the claims data to determine if Bestwall Claimants failed to disclose evidence of alternative asbestos exposures in the tort system. Trust Motion ¶¶11-18. To perform this analysis, Bestwall must be able to match the data to specific claimants and their litigation files to understand what was disclosed in the tort system and when it was disclosed—just as Bestwall did with the eight exemplar cases mentioned above. Anonymizing the data before production—so that Bestwall could never know the identity of claimants—would make this analysis impossible and defeat a core reason for this discovery.[9]

---

[9] The DCPF Trusts suggest that Bates White's other commercial work concerning asbestos liability forecasting somehow increases the risk of "data breach or misuse." Motion ¶35. Impugning the motivations and business practices of Bates White, without any evidence or basis, is improper. Bates White is routinely entrusted with highly confidential information and has data-security protocols that implement industry best practices to protect that information. Bates Declaration

Other courts have rejected asbestos trusts' requests to anonymize claims data produced in discovery. In *Garlock*, the Bankruptcy Court denied a very similar objection and ordered non-anonymized DCPF Trust data be produced for thousands of claimants. App. 58, 873-76. Claim-by-claim matching and analysis based on that data was critical to Garlock's discovery of pervasive evidence manipulation. Later in *Garlock*, the Bankruptcy Court rejected the Manville Trust's request for pre-production anonymization of claims data it produced for over 100,000 claimants. App. 760-76, 905-06.

Finally, in *Motors Liquidation*, the bankruptcy court ordered a post-production anonymization process (similar to the Trust Order's process) for DCPF Trust data sought for over 5,000 claimants. App. 919-925.[10] Notably, that anonymization process was consensually developed by the parties, and agreed to by the DCPF Trusts. App. 928-931. Here, the DCPF Trusts' request to anonymize the claims data pre-production would render the data almost entirely unusable to Bestwall.

---

¶25. Moreover, Bates White performed the same post-production anonymization of data for over 100,000 claimants in *Garlock*. App. 766-69. The DCPF Trusts never suggest that Bates White failed to strictly adhere to the data-security protocols in that case.

[10] Ultimately, the data were not needed and the bankruptcy court's order was vacated after the parties stipulated, for estimation purposes, that the asbestos claimants had asserted claims against and recovered from all the trusts subject to the discovery. App. 819-25.

## CONCLUSION

For all these reasons, Bestwall respectfully requests that the Court deny the

Motion.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in 14-point Times New Roman font and that

it contains 4,961 words as determined by Microsoft Word, excluding the case

caption, Table of Contents, Table of Authorities, signature block, and this

certificate.

Dated: May 3, 2021

**BARNES & THORNBURG LLP**

*/s/ Chad S.C. Stover*
Chad S.C. Stover (No. 4919)
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 300-3474
Fax: (302) 300-3456
E-mail: chad.stover@btlaw.com

Garland S. Cassada (*pro hac vice*)
Stuart L. Pratt (*pro hac vice*)
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon Street, Suite 1900
Charlotte, NC 28246
Tel: (704) 377-2536
E-mail: GCassada@robinsonbradshaw.com
E-mail: SPratt@robinsonbradshaw.com

*Attorneys for Bestwall LLC*