# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Misc. No. 21-141-CFC |
| | ) | |
| BESTWALL, LLC, | ) | Underlying Case No. 17-BK-31795 |
| | ) | (LTB) |
| Debtor. | ) | (U.S. Bankruptcy Court for the |
| | ) | Western District of North Carolina) |

## THIRD PARTY TRUSTS' REPLY IN SUPPORT OF
## MOTION TO QUASH OR MODIFY SUBPOENAS

The ten asbestos settlement trusts identified below[1] (the "Trusts"), by and through their undersigned counsel, respectfully submit this reply in support of their Motion to Quash or Modify Subpoenas (the "Motion to Quash").[2]  In support of the Motion, the Trusts submit as follows:

---

[1] The ten trusts are:
- The Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust;
- The Celotex Asbestos Settlement Trust;
- The DII Industries, LLC Asbestos PI Trust;
- The Flintkote Asbestos Trust;
- The Pittsburgh Corning Corporation Personal Injury Settlement Trust;
- The WRG Asbestos PI Trust;
- The Federal-Mogul Asbestos Personal Injury Trust;
- The Babcock & Wilcox Company Asbestos PI Trust;
- The United States Gypsum Asbestos Personal Injury Settlement Trust; and
- The Owens Corning / Fibreboard Asbestos Personal Injury Trust.

[2] As set forth in footnote 2 to the Motion to Quash, and the Joinder to the Motion to Quash (D.I. 3), the DII Industries, LLC Asbestos PI Trust joins the Motion to the extent it seeks to quash or modify the subpoena served on DCPF.

## **INTRODUCTION**

1.Bestwall's opposition to the Motion to Quash fails to demonstrate that the scope of the Trust Claimant data sought is proper. Rather, it focuses on a litany of issues not implicated by the Motion to Quash, and does little more than seek to obscure the narrow issues before this Court. At the forefront of these assertions is Bestwall's continued contention that the Motion to Quash is an improper collateral attack. Putting aside the irrelevant assertions, Bestwall's opposition boils down to two principal arguments (i) sampling will not "materially decrease the burden" of production and will deprive Bestwall and its experts of "necessary data," Resp. (D.I. 13), 20; and (ii) pre-production anonymization is unworkable because Bestwall would be unable to match the data to specific claimants and their litigation files, *id.* at 21.

2.None of these arguments withstands scrutiny. First, the Motion to Quash is properly before this Court pursuant to Federal Rule of Civil Procedure 45(d)(3)(A). As for the data Bestwall seeks, Bestwall's opposition wholly fails to demonstrate that it *needs* the highly sensitive data of up to more than *15,000* Trust Claimants. The subpoenas are therefore overbroad and must be quashed. If the subpoenas are not quashed, they must be modified to provide for sampling and pre-production anonymization. Sampling is necessary because it will (i) drastically reduce the risk of harm to the Trust Claimants; and (ii) will only alter the volume,

not the substance, of the data Bestwall would receive.  Lastly, in addition to sampling, pre-production anonymization is a necessary, workable safeguard to protect the Trust Claimants.  DCPF is well-situated to conduct this process.

## ARGUMENT[3]

### A. Rule 45(d)(3)(A) Requires the Court Quash or Modify Subpoenas that Unnecessarily Require the Disclosure of Confidential Data

3. Federal Rule of Civil Procedure 45(d)(3)(A) requires the court in which compliance with the subpoena is required to quash or modify a subpoena which requires disclosure of privileged or other protected matter.  Fed. R. Civ. Pro. 45(d)(3)(A).  A subpoena should be quashed where it constitutes "an overbroad, general request for unlimited access to [confidential] information."  *Apex Fin. Options, LLC v. Gilbertson*, 2021 WL 965509, at *5 (D. Del. Mar. 15, 2021).

---

[3] In the Motion to Quash, the Trusts asserted, *inter alia*, that the subpoenas should be quashed because they were not personally served on DCPF and nine of the Trusts. Following the filing of the Motion to Quash, the nine Trusts and DCPF learned that those subpoenas had been personally served.  When the Trusts are served through hand-delivery on DCPF, DCPF scans the subpoena and then forwards it to the Trusts via e-mail indicating the method of service.  Due to the COVID-19 pandemic, subpoenas that were hand delivered to DCPF, were processed through DCPF's mailroom, a step not taken prior to the pandemic, and thus incorrectly believed to have been served by mail.  The Trusts now understand and acknowledge that the subpoenas were properly served.

**B.    The Trusts' Challenge to the Subpoenas is Properly Before this Court**

4.     For a second time, Bestwall tries to paint the Motion to Quash as an improper collateral attack on the March 24 Order.  Bestwall asserts the Motion to Quash is improper because it previously provided the Trusts with notice of the 2004 Motion in the Bankruptcy Proceeding.  Resp. (D.I. 13), 8-10.  This argument is meritless.

5.     At the outset, accepting Bestwall's argument would undermine Rule 45's intended purpose and swallow the Rule.  Rule 45 assures that a nonparty can seek local protection from a burdensome or overly broad subpoena.  Fed. R. Civ. P. 45, Advisory Committee Note (2013 Amendment) ("To protect local nonparties, *local resolution of disputes about subpoenas is assured* by the limitations of Rule 45(c) and the requirements in Rules 45(d) and (e) that motions be made in the court in which compliance is required under Rule 45(c)." (emphasis added)).  Accepting Bestwall's argument that providing notice of a 2004 Motion is sufficient to bar a later-filed Rule 45 motion would eviscerate this fundamental protection.  A nonparty would be *required* to submit to a foreign court's jurisdiction before a subpoena is even authorized.  Moreover, pursuant to Bestwall's argument, any Rule 45 remedy would be foreclosed by a non-party merely being provided notice that a subpoena *may* issue.  For these reasons alone, Bestwall's argument fails.

6. Next, Bestwall's reliance on *In re Motors Liquidation Co.* is misplaced. By omitting the date from its opposition and burying it at the end of its 931-page appendix, perhaps Bestwall hoped this Court would not notice the *In re Motors Liquidation Co.* case *is 11 years old.* Resp. App. 907 (dated August 9, 2010). Furthermore, as Bestwall recognizes, only five of the Trusts were then involved in that case. Resp. 9 n.3. The Flintkote, Pittsburgh Corning Corporation, and WRG trusts did not even exist at that time. Bestwall's effort to saddle all the Trusts with the statements of a limited number of them in a differently-postured, eleven-year-old proceeding is baseless. Moreover, an objection made by a subset of the Trusts to a Rule 2004 motion that sought, among other things, "all claim forms and other Documents" submitted to those Trusts and "[a]ll Documents … reflecting decisions or resolutions concerning...claims [of claimants, who had filed mesothelioma lawsuits against General Motors,] against" those Trusts, did not bind *any* of the Trusts to appear and object to any future Rule 2004 motion seeking discovery from DCPF or the Trusts. Rule 2004 Motion, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. D.I. 6383), Ex. D. Bestwall cites no authority to support such a proposition.

7. Finally, the Motion to Quash is properly before this Court. As nonparties, the Trusts were not obligated to become involved in the Bankruptcy Proceeding. Further, given that the 2004 Motion was *directed to DCPF* and *DCPF*

5

*was opposing* the 2004 Motion, it was not necessary for the Trusts to intervene at that juncture.  Only once the subpoenas were issued and served on the Trusts and DCPF, were the Trusts empowered to protect the Trust Claimant data under Rule 45.  Once this threshold passed, the Trusts promptly took action pursuant to their fiduciary duties by filing the Motion to Quash in this district.  Bestwall's contention that the Trusts should be precluded from litigating the Motion to Quash based on the 2004 Motion is therefore meritless.

### C. The Subpoenas Must be Quashed Because Bestwall has Failed to Show that it Needs the Data of up to More than 15,000 Trust Claimants

8.  Bestwall's opposition focuses on the *general* relevancy and necessity of the Trust Claimants' data to the Bankruptcy Proceeding.  This misconstrues the issues presented by the Motion to Quash.  The Motion to Quash presents only two narrow questions – whether the subpoenas are overly broad in scope and whether any production should be further limited to prevent an unjustifiable risk of harm to the Trust Claimants. Consistent with the March 24 Order, the Motion to Quash does not question the Bankruptcy Court's determination of general relevancy or Bestwall's necessity for *some limited, anonymized* portion of the Trust Claimants'

data.[4] It is the unnecessary *scope* of Trust Claimant data sought and *lack of sufficient protective measures* that the Trusts challenge.[5]

9. Bestwall's opposition nevertheless fails to show that it *needs* all the data it is seeking – the data of up to more than 15,000 Trust Claimants – especially when its request is balanced against the Trust Claimants' privacy interests. Bestwall's demand is overbroad and misaligned with the inquiry it purportedly plans to undertake – to determine whether there was a pattern of false claims submissions to it or its predecessor, and whether any such pattern was prevalent. Bestwall again fails to explain why it needs the personal information of up to approximately 15,000 individuals to determine if such a pattern exists. The subpoenas are therefore overbroad and must be quashed. *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (discovery of subpoenaed information is "not allowed where no need is shown"); *Apex Fin. Options, LLC*, 2021 WL 965509, at *5 (stating a subpoena should be quashed where it is "an overbroad, general request for unlimited access to [confidential] information.").

---

[4] By acknowledging the Bankruptcy Court's finding of Bestwall's need for *some limited, anonymized* portion of the Trust Claimants' data, the Trusts in no way concede that Trust Claimant data may be relevant or necessary in any future estimation proceedings.

[5] Bestwall also contends that the March 24 Order adequately protects the Trust Claimants. As set forth in the Motion to Quash and this reply, this is not the case.

### D. A Random Sample of Data for up to 1,500 Trust Claimants is Sufficient for Bestwall to Accomplish its Purpose

10. If the subpoenas are not quashed altogether, producing data for a random sample of no more than 10% of the 15,000 claimants would provide a statistically reliable sample of the claims in issue. Bestwall, however, contends sampling is inappropriate because it "will not materially decrease the burden on the DCPF Trusts and will deprive Bestwall and its experts of necessary data for their estimation analysis." Resp. 20. These arguments do not justify the overly broad production of highly sensitive data Bestwall seeks.

11. Insofar as Bestwall contends sampling is inappropriate because it will not lessen the Trusts' burden in producing the data, this argument again eschews the issue before the Court. The Trusts bring this Motion not to lessen their own burden, but to protect the Trust Claimants from an unjustifiable risk of harm – the Trusts do so pursuant to their fiduciary duties. Mot. to Quash. ¶5 ("The most pressing issue presented by this Motion is…the undue risk of damages the requested scale and manner of the production imposes on the Trust Claimants."). A randomly selected, sampling-based production of data concerning up to 1,500 Trust Claimants would better protect Trust Claimants' highly sensitive data, and reduce the risk of harm from any disclosure of such data.

12. Next, a sufficiently reliable statistical, representative sample would not deprive Bestwall's experts of necessary data for their estimation analysis.[6] A representative sample is exactly that – representative of the group as a whole. Sampling would not modify the substance of the data Bestwall receives – only the volume. Sampling therefore would not substantively alter Bestwall's analysis or "deprive" it of claimed necessary data. Moreover, it would not encumber Bates White – Bestwall's liability consultant – as Bates White is more than capable of working with a statistical sample. Mot. to Quash ¶25. More importantly, a randomized, statistically sufficient sample of data from 1,500 Trust Claimants would shield 13,500 Trust Claimants from an unjustifiable risk of harm from an overly broad disclosure of their data. Accordingly, if the subpoenas are not quashed, they should be modified to provide a random sample of no more than 10% of the 15,000 claimants.

### E. The Trust Claimant Data can be Anonymized Before Production Without Impairing Bestwall's Use of the Data

13. Bestwall claims pre-production anonymization is "unworkable" because "Bestwall must be able to match the data to specific claimants and their

---

[6] Insofar as Bestwall asserts that 10% would not be a representative sample, this statement is belied by the authority. *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. Porter Hayden Co.*, 2012 WL 628493, at *1 (D. Md. Feb. 24, 2012) (10% sample); *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at *5, 7-10 (S.D.N.Y. Dec. 3, 2012) (4% sample). Furthermore, a sample of up to 10% would not interject disputes, where, as here, the sample is statistically sufficient.

9

litigation files to understand what was disclosed in the tort system and when it was disclosed." Resp. 20.  This assertion is incorrect.

14.  Pre-production anonymization is an effective safeguard that can and must be implemented here.  Pre-production anonymization ensures maximum protection of the Trust Claimants' data, and reduces the risk of harm from unnecessary or unintended disclosure of the data.  So long as the initial matching process occurs prior to anonymization, pre-production anonymization is possible.  In fact, as Bestwall recognizes, the March 24 Order requires as much.  Resp. 19.

15.  DCPF should be permitted to conduct the matching process and anonymization of the Trust Claimant data before it is produced.  DCPF already has custody of, and access to, all the Trust Claimants' data, and is well-qualified to complete the process.  DCPF holds and processes claimant information on behalf of the Trusts, and has contractual obligations to maintain confidentiality over Trust Claimant information.  Accordingly, Trust Claimants have already trusted DCPF with that sensitive information – they have not done so with Bates White.  This process would be nearly identical to the process set forth in the March 24 Order – the only difference being that DCPF, not Bates White, will complete the process.  This modification will reduce any unnecessary risk of harm or misuse of Trust Claimant data.  Bestwall's assertion that pre-production anonymization is unworkable is therefore meritless.

16. In sum, the subpoenas must be quashed because they are overbroad. If the subpoenas are not quashed, the subpoenas should be modified to require: (i) the production of a randomized representative sample of no more than 10% of the Trust Claimants' data; and (ii) DCPF to anonymize the data before producing complete data to Bates White or Bestwall.

## CONCLUSION

For these reasons and the reasons set forth in the Trusts' Motion to Quash, the Trusts respectfully request the Court enter an order quashing or modifying the subpoenas served on the Trusts and DCPF.

Dated:     May 10, 2021

*/s/ Beth Moskow-Schnoll*
Beth Moskow-Schnoll (DE No. 2900)
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com

*Attorneys for Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; Celotex Asbestos Settlement Trust; DII Industries, LLC, Asbestos PI Trust; Flintkote Asbestos Trust; Pittsburgh Corning Corporation Personal Injury Settlement Trust; WRG Asbestos PI Trust; Federal-Mogul Asbestos Personal Injury Trust; Babcock & Wilcox Company Asbestos PI Trust; United States Gypsum Asbestos Personal Injury Settlement Trust; and Owens Corning / Fibreboard Asbestos Personal Injury Trust*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this reply is in 14-point Times New Roman font and that it contains 2,413 words as determined by Microsoft Word, excluding the case caption, signature block, and this certificate.

Dated: May 10, 2021

/s/ Beth Moskow-Schnoll
Beth Moskow-Schnoll (No. 2900)
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Tel: (302) 252-4447
moskowb@ballardspahr.com

*Attorneys for Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; Celotex Asbestos Settlement Trust; DII Industries, LLC Asbestos PI Trust; Flintkote Asbestos Trust; Pittsburgh Corning Corporation Personal Injury Settlement Trust; WRG Asbestos PI Trust; Federal-Mogul Asbestos Personal Injury Trust; Babcock & Wilcox Company Asbestos PI Trust; United States Gypsum Asbestos Personal Injury Settlement Trust; and Owens Corning / Fibreboard Asbestos Personal Injury Trust*