IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Misc. No. 21–mc–0141–CFC |
| | ) | |
| BESTWALL, LLC, | ) | Underlying Case: 17-BK-31795 |
| | ) | (U.S. Bankr. W.D.N.C.) |
| Debtor. | ) | |

**JOINDER & MOTION TO QUASH OR MODIFY SUBPOENAS, OR ALTERNATIVELY FOR PROTECTIVE ORDER**

The subpoenas at the center of this miscellaneous action target a wealth of personal identifying information—names, birthdays, Social Security numbers, *etc.*—belonging to thousands of asbestos victims who have long-since settled their claims against subpoenaing party Bestwall, LLC ("Bestwall"). Bestwall admits it settled the vast majority of those old lawsuits through group settlements in which it *never* sought the subpoenaed evidence it now claims to need.

Rule 45 requires quashing subpoenas that either target "protected" matters or subject a person to an "undue burden." FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv). Now come over 10,000 mesothelioma victims whose highly personal information is sought (collectively, "Matching Claimants"), as nonparties, by and through the undersigned counsel[1], to move this Court under Rule 45 to enter an order quashing (or modifying) the subpoenas served on ten asbestos bankruptcy trusts ("the

---

[1] A list of the law firms acting as counsel to the Matching Claimants in this proceeding are attached as Ex. A.

1

Trusts")[2] and their Delaware-based administrator (the "Delaware Claims Processing Facility," or "DCPF"). In support, Matching Claimants[3] assert:

### A. BACKGROUND

For four decades, asbestos victims sued Bestwall's predecessor Georgia-Pacific in tort for harm wreaked by its asbestos-containing construction products. Georgia-Pacific settled the vast majority of those asbestos cases via group settlements (or "administrative deals") in which it never participated in discovery and never solicited evidence regarding asbestos exposure. *See* § A.2, below.

---

[2] The ten Trusts are:
- The Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust;
- The Celotex Asbestos Settlement Trust;
- The Flintkote Asbestos Trust;
- The Pittsburgh Corning Corporation Personal Injury Settlement Trust;
- The WRG Asbestos PI Trust;
- The Federal-Mogul Asbestos Personal Injury Trust;
- The Babcock & Wilcox Company Asbestos PI Trust;
- The United States Gypsum Asbestos Personal Injury Settlement Trust; and
- The Owens Corning / Fibreboard Asbestos Personal Injury Trust.
- The DII Industries, LLC Asbestos PI Trust.

[3] Matching Claimants are defined as claimants in the Trusts' databases whose injured party datafields or related claimant datafields match (or may match) any (a) nine-digit SSN and (b) last name associated with a Bestwall Claimant in Bestwall's database and who did not file their Trust claims *pro se*. *In re Bestwall LLC*, No. 17-31795, Bankr. W.D.N.C., D.I. 1237 ("Debtor's Motion for Bankr. R. 2004 Exam. of Asbestos Trusts"), at 1; *id.* at D.I. 1672 ("Order Granting Debtor's Motion for Bankruptcy Rule 2004 Examination of Asbestos Trusts and Governing Confidentiality of Information Provided in Response"), at 5. The Bankruptcy Court has forbidden the disclosure of any claimant information, including name, on this docket. *See id.* at ¶ 8, ¶ 10(e) ("No claimant-specific data from or derived from any Confidential Trust Data….shall be … placed on the public record or … filed with this Court, the District Court, or any reviewing court (including under seal …)"). So as not to clutter the record here, when an incontrovertible admission comes from the bankruptcy docket (of which this Court may take judicial notice), the instant motion points to that docket's ECF entry.

Dissatisfied with the American tort system—where one court found a sufficient basis for inferring Georgia-Pacific's litigation tactics may have "further[ed] … a fraud," *In re New York City Asbestos Lit.*, 966 N.Y.S. 2d 420, 423 (N.Y. App. Div. 2013)**,** and where its historical conduct exposed it to billions of dollars in costs and liability[4]—Georgia-Pacific found a new scheme.

In July 2017, Georgia-Pacific moved to Texas for one day to split into two companies: Georgia-Pacific, LLC ("New G-P") and employee-free shell company Bestwall.[5] Saddled with Georgia-Pacific's asbestos liabilities, Bestwall immediately moved to North Carolina to situate itself in a favorable bankruptcy district. It declared bankruptcy on November 1, 2017.

Now Bestwall, despite assurances it can pay 100% of its asbestos liability, is using third-party bankruptcy discovery to re-litigate settled cases and minimize the funds it may pay into a bankruptcy trust. Such trusts are meant to ensure that current and future victims of asbestos-related illnesses receive "just and comparable compensation" for their injuries when the business that injured them faces "overwhelming liability." *In re Flintkote Co.*, 486 B.R. 99, 131, 132–33 (Bankr. D. Del. 2012). By trying to create doubt (in one handpicked jurisdiction) as to the

---

[4] *See In re Bestwall LLC*, No. 17-31795, Bankr. W.D.N.C., D.I. 12 (Informational Brief of Bestwall LLC), at 13.

[5] Bestwall was a joint compound manufacturer bought by Georgia-Pacific in the 1950s. The name fell out of use until it was resurrected as part of Georgia-Pacific's bankruptcy scheme.

viability of thousands of historical settlements, Bestwall hopes to define "just and comparable" outside the jury system.

1. **Bestwall's Legal Theory & the Highly Confidential Subpoenaed Information**

Bestwall has subpoenaed from ten Delaware Trusts the personal information supporting thousands of Trust claims—for every "Matching Claimant" who also settled a case against Georgia-Pacific—dating back decades. *See* D.I. 1-3. In addition to asbestos exposure information, Bestwall seeks each Matching Claimant's full name, Social Security number, date of birth, date of death, state of residence, and the full name and Social Security number of any family member claimant. [6](D.I. 1-3, at 11.) The personal identifying information is to be aggregated by Bestwall's estimation experts in a file called a "Matching Key," purportedly to help navigate Trust exposure information to compare with historical Georgia-Pacific case information and settlements.

According to Bestwall, the subpoenaed information will show that past asbestos plaintiffs who also made Trust claims hid evidence, primarily of alternative exposures, and therefore that Bestwall's overall asbestos liability (and the size of the

---

[6] Attached as Ex. B are affidavits from counsel for some Matching Claimants who have expressed concerns regarding the disclosure of private information to Bestwall.

trust Bestwall may have to establish) should be smaller than past settlements suggest.[7]

But in the majority of cases, despite the opportunity to cross-examine every witness who testified about asbestos exposure, this is the first time Georgia-Pacific or Bestwall has *ever* asked for information about alternative exposures.

### 2. Bestwall's Group Settlements & Historical Disinterest in Asbestos Exposure Information

Bestwall freely admits that "some" historical Georgia-Pacific cases "settled early to save the costs of defense," including administrative deals or "group settlements negotiated with plaintiff law firms for groups of clients." *In re Bestwall*, "Info. Br. of Bestwall LLC," Bankr. W.D.N.C., D.I. 12, at 12 n.9. But "some" does not do justice to the number of tort cases where Georgia-Pacific ignored evidence of asbestos exposures attributable to other entities.

According to Bestwall's estimation expert, "approximately 70% of … mesothelioma claims Bestwall paid to settle after 2010 were resolved" through settlements "based on an agreed upon matrix or resolved groups of claims for negotiated lump sums *without examining individual claims*." (Ex. C, Dec. of Charles

---

[7] Bestwall intends to establish this at a bankruptcy "estimation hearing," a procedure for determining the appropriate methodology for estimating the debtor's aggregate asbestos liability with respect to current asbestos injury claims and unknown future claims. *In re Eagle-Picher Indus., Inc.*, 189 B.R. 681 (Bankr. S.D. Ohio 1995); *In re Grossman's Inc.*, 607 F.3d 114, 127 (3d Cir. 2010).

5

E. Bates, Ph.D., in Support of the Debtor's Rule 2004 Motions ¶ 17 (emphasis added).)

As part of its group settlements, Georgia-Pacific required that it be named in suits but never served, required to answer, or participate in discovery (or any other proceeding). The entirety of Georgia-Pacific's group settlement "exposure criteria" comprised the place of exposure, identification of either a Georgia-Pacific asbestos-containing product (or facility), and a plaintiff's dates of exposure. In other words, Bestwall now asserts that it needs alternate exposure evidence from every plaintiff with whom Georgia-Pacific ever settled, but admits it never considered alternate exposure evidence in the vast majority of its cases.[8]

The Delaware Trusts have moved to quash the subpoenas. (D.I. 1.) The instant Movants—the "Matching Claimants" whose information is sought—hereby join the Trusts' motion and bring their own motion to quash (or modify) the subpoenas. Because the subpoenas seek highly confidential information for which Bestwall has not shown a particularized need, this Court must quash (or modify) the subpoenas, or alternatively order Bestwall to identify the specific claimants whose subpoenaed information may be relevant to its legal theories.

---

[8] Because Georgia-Pacific's administrative deals / group settlements were confidential in nature, the Matching Claimants cannot specify the number of cases Georgia-Pacific settled without any consideration of alternate asbestos exposures. But Bestwall can.

### 3. **The Bankruptcy Trusts**

Asbestos bankruptcy trusts, formed under 11 U.S.C. § 524(g), ensure that current and future victims of asbestos-related illnesses receive "just and comparable compensation" for their injuries when the business that injured them faces "overwhelming liability." *In re Flintkote Co.*, 486 B.R. 99, 131, 132–33 (Bankr. D. Del. 2012), *quoting* H.R. Rep. No. 103-835, Section 111, at 41. As a general matter, the trust assumes the liability of an asbestos tortfeasor and must use its assets to pay future claims and demands. *See In re Grossman's Inc.*, 607 F.3d 114, 126 n.12 (3d Cir. 2010).[9]

To make a claim, an asbestos victim must submit a wide array of personal information to a trust. For example, the Babcock and Wilcox Company Trust may require (depending on the asbestos disease) "the submission of X-rays, CT scans, detailed results of pulmonary function tests, laboratory tests, tissue samples, results

---

[9] Of course, Georgia-Pacific's pre-524(g) liability dump has prompted disagreement in bankruptcy court, where Bestwall has promised it can easily pay all of its present and future asbestos liabilities. (*See* Ex. E, Bankr. W.D.N.C. No. 17-BK-31796, Hr'g Tr. Nov. 9, 2018 at 41:3–7, (Bestwall attorney: "[T]he assets of New GP and the paying power of New GP [is] available to the asbestos claimants just the same as it was before"); *id.* at 102:20–21 ("We have a company … that has … a $22 billion net worth.")) *But see In re: National Rifle Ass'n*, No. 21-30085 (Bankr. N.D. Tex. 5/11/2021), at 29 (attached as Ex. F) ("[A] bankruptcy case filed for the purpose of obtaining an unfair litigation advantage is not filed in good faith."); *id.* at 31 (dismissing the National Rifle Association's bad faith bankruptcy and noting that "based on the evidence, the NRA is financially healthy"); *In re SGL Carbon Corp.*, 200 F.3d 154, 163 (3d Cir. 1999) (reversing a district court's failure to dismiss a bad faith debtor's bankruptcy because "the record [was] replete with evidence of [the debtor's] economic strength"). Whether the Bestwall bankruptcy scheme constitutes "bad faith" is a matter beyond the ambit of this motion, but the Court should not ignore Bestwall's obvious motives when assessing its purported need for confidential information here.

of medical examination or reviews of other medical evidence." (Ex. D, Collected Trust Distribution Procedures, at p. 9), *See also In re Western Asbestos Co.*, 416 B.R. 670, 709 (N.D. Cal. 2009) (claimants possessed a legally protected privacy interest in their claim information, which "in large part includes medical records, financial details, and other information of a highly personal nature.").

A trust's "distribution procedures" ("TDPs") also require evidence of meaningful and credible exposure to asbestos products made by each trust's predecessor-tortfeasor. (*See* Ex. D, at p. 10) Exposure evidence includes information like a claimant's occupation(s) and testimony and/or affidavits identifying relevant asbestos-containing products. (*Id.* at p. 52.) All information submitted by claimants to a trust is to be treated as made in the course of settlement discussions. (*See* D.I. 1-2 § 6.5; id. at p.53.)

## B. LEGAL STANDARDS

A district court where subpoena compliance is required "must quash or modify" a subpoena that [1] requires disclosure of privileged or other protected matter,[10] or [2] subjects a person to undue burden. FED. R. CIV. P. 45(d)(3)(A)(iii)–(iv). A person affected by a subpoena, whether a nonparty or party, can move to quash or modify, or for a Rule 26(c) protective order.

---

[10] The Rule does allow for situations where a privilege is waived or an exception exists, FED. R. CIV. P. 45(d)(3)(A)(iii), but there are no waivers or privilege exceptions here.

Any person with a right or privilege in subpoenaed information can challenge the subpoena. *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 239 (E.D. Va. 2012), *quoting U.S. v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005); *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434 (E.D. Pa. 2001); WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 2463.1 (3d ed. 2016). Federal courts recognize a personal right in records "likely to contain highly personal and confidential information" like Social Security numbers, legally confidential medical records, and family member information. *Singletary*, 289 F.R.D. at 240; *accord Barrington v. Mortgage ID, Inc.*, 2007 WL 4370647, at *2 (S.D. Fla. 2007); *Richards v. Convergys Corp.*, 2007 WL 474012, at *1 (D. Utah 2007); *Beach v. City of Olathe*, 2001 WL 1098032, at *1 (D. Kan. 2001).

As with all civil discovery, the scope of a subpoena is limited by proportionality principles. FED. R. CIV. P. 26(b)(1); *Virginia Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019); *In re Schaefer*, 331 F.R.D. 603, 607–08 (W.D. Pa. 2019). Where a subpoena targets a nonparty, courts apply a "more demanding variant of the proportionality analysis." *Jordan*, 921 F.3d at 189 (collecting cases). A potential invasion of privacy—in itself grounds to quash under Rule 45(d)(3)(A)(iii)—also affects whether a burden is "undue." *Id.* (collecting cases).

### C. ANALYSIS

The underlying bankruptcy and litigation from which the subpoenas stem have an unquestionably complicated procedural history. But resolution of the instant motion turns on straightforward application of the Civil Rules and settled decisional law. The Court must quash (or modify) the subpoenas because they foist an undue burden onto both the Trusts and Movants. Bestwall has not come close to the requisite showing of need necessary to outweigh the grave confidentiality concerns inherent in the subpoenas.

1. **A Disproportionately Undue Burden: Bestwall Needs Only a Small Percentage of Matching Claimant Information, yet it Seeks a Sweeping Amount of Confidential Information.**

Federal law categorically recognizes that a subpoena that subjects "a person" to undue burden "must" be quashed or modified. FED. R. CIV. P. 45(d)(3)(A)(iv). Independently, a subpoena that requires disclosure of "protected matter" like social security numbers, full name, family information, and dates of birth "must" be quashed or modified. Fed. R. Civ. P. 45(d)(3)(A)(iii).

Rule 45 works in tandem with Rule 26's proportionality requirement, and the substantive bases for denying discovery are similar. *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 203 F.R.D. 525, 529 (D. Del. 2002). A court balancing undue hardship against the need for requested information may consider the relevance of the materials, the requesting party's need for the information, the confidentiality of the information sought, the breadth of the request, the recipient's

10

nonparty status, and the burden imposed. *Id.*; *In re Schaefer*, 331 F.R.D. 603, 608–09 (W.D. Pa. 2019).

Even if the information sought is relevant, discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or where the potential harm caused by production outweighs the benefit. *Id.*, *citing Micro Motion Inc. v. Kane Steel Co., Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990). The burdens of a subpoena are not only financial; for example, "a subpoena may impose a burden by invading privacy or confidentiality interests." *Jordan*, 921 F.3d at 189; *see also In re Schaefer*, 331 F.R.D. at 609 (undue burden and the requesting party's need for information are issues that can dovetail).

Here, Bestwall has failed to show that the sweep of confidential information sought is proportional to its purported needs.

> a. ***Too Loose a Fit: Bestwall's "Need" for the Data does not Comport with its Legal Theories. Only a Small Percentage of the Confidential Information Sought is Relevant, and it is Bestwall's Unmet Burden to Identify that Percentage.***

Bestwall claims to need a vast amount of information showing "alternative exposures," *i.e.*, claimants' exposures to asbestos for which Georgia-Pacific was not responsible. *See In re Bestwall LLC*, No. 17-31795, Bankr. W.D.N.C., D.I. 1237, 8–10. Under Bestwall's new theory-of-the-case, it overpaid in the tort system because the withholding of alternative exposure evidence infected its assessment of case values.

But Bestwall's position has a fatal flaw: in the majority of its cases, there could be no withholding of alternative exposure evidence because Georgia-Pacific failed to solicit *any exposure evidence at all*. Bestwall's bankruptcy expert has sworn that in approximately 70% of post-2010 mesothelioma cases, Bestwall settled via agreements "based [on a] matrix" or via lump sum deals "*without examining individual claims*." (Ex. C, Dec. of Charles E. Bates, Ph.D., in Support of the Debtor's Rule 2004 Motions ¶ 17 (emphasis added).) Because Georgia-Pacific's group settlements were confidential, the Movants cannot identify a specific proportion of claimants who settled under administrative deals, much less identify individual Trust claimants who resolved their Georgia-Pacific tort claims via the evidence-free matrices agreed to by Georgia-Pacific.

Bestwall, on the other hand, knows precisely which claimants resolved their tort claims via administrative deal. It therefore knows the contrapositive: which claimants had tort cases in which Georgia-Pacific weighed (or may have weighed) exposure evidence as part of its case valuation. In other words, Bestwall admits it has no need for the large, scattershot amount of subpoenaed confidential information, but refuses to define the Matching Claimant data it actually needs.[11]

---

[11] In addition to the indisputable fact that Georgia-Pacific chose never to inquire about Trust information in 70% of the cases against it, it is equally indisputable that in many cases Georgia-Pacific *did* litigate, plaintiffs disclosed trust claim information voluntarily (pursuant to local orders and/or in response to discovery requests). Bestwall cannot demonstrate a need for the Trust to produce information that was already produced to Georgia-Pacific and its lawyers. Bestwall's subpoena fails to distinguish between cases where it received Trust information in the tort system

The Trusts were not created as an information clearinghouse for potential bankruptcy petitioners. It is up to Bestwall, as the party seeking confidential and settlement-related information, to make a well-tailored, particularized showing of relevance before that information is produced. *See Ford Motor Co.*, 257 F.R.D. at 423 (parties seeking to discover settlement communications must make a "heightened, more particularized showing of relevance"); *Mannington Mills, Inc.*, 206 F.R.D. at 529 (confidentiality concerns must be balanced against relevance and need under the interrelated Rule 26 / Rule 45 analysis).

Without revealing specific information uniquely in its control—the claimant cases for which it depended on asbestos-exposure information—Bestwall falls far short of the heightened showing of relevance and need required to command production of confidential information. The Court should QUASH the subpoenas.

### b. Heavy Confidentiality Concerns: Data Security, a Chilling Effect on Settlements, and Georgia-Pacific's Unique Untrustworthiness

The Trusts' motion to quash (D.I. 1), which the instant Movants join, recounts many of the data security concerns inherent in Bestwall's scheme. In addition to the obvious risk of allowing centralization of personal information (by a third party with

---

and those cases where, for whatever reason, it did not. Rather than review its own files, Bestwall wants the Trust to assemble and organize information in the Trust's possession so that Bestwall does not have to go through its own files to do the same thing. To meet its burden of demonstrating need, Bestwall should have to certify *for each individual case* that it has reviewed its own case file and that it does not have the Trust information subpoenaed.

13

a limited duty to protect it), the Court should weigh the unique character of both the Trust claimants and Bestwall.

As to the Trust claimants, they are *the* target demographic for identity theft plots. Because of the latency period of asbestos disease, the claimant group largely comprises widow and widower senior citizens. According to the Department of Justice, seniors are "some of our nation's most vulnerable citizens." *See* U.S. DEP'T OF JUSTICE, "Elder Justice Initiative (EJI)," https://www.justice.gov/elderjustice. The Justice Department takes scams against seniors so seriously it has created a "Transnational Elder Fraud Strike Force," which works to warn seniors of the myriad data dangers they face. *See* U.S. Dep't of Justice, "Senior Scam Alert," https://www.justice.gov/elderjustice/senior-scam-alert. In this era of runaway identity theft and data protection dangers—the Russian intelligence penetration of government and businesses via SolarWinds, the Colonial Pipeline hack, the Equifax data breach, *etc.*—forced disclosure and aggregation of thousands of seniors' respective Social Security numbers, names, and birthdays will create a juicy target for malevolent actors.

The Trust claimants have other valid reasons for keeping their information private. Not every asbestos victim is blessed with saintly family members or benevolent neighbors. Keeping an influx of money private is a choice that should be left to each claimant, not to Bestwall. That is one reason the court-approved TDPs

14

require that submissions to each Trust be treated as confidential settlement communications. Permitting a third party like Bestwall to sift through such settlement communications will have a chilling effect on other settlements,[12] to the detriment of the policies served by the Rules of Evidence, *see* Rule 408, and the bankruptcy system itself, *see In re Flintkote Co.*, 486 B.R. at 132–33. *See also Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 423 (D.N.J. 2009) (recognizing that although the Third Circuit does not recognize a "settlement privilege," parties seeking to discover settlement communications must make a "heightened, more particularized showing of relevance").

Georgia-Pacific, on the other hand, has a track record of abusing the shield of confidentiality for nefarious purposes. In *In re New York City Asbestos Litigation*, Georgia-Pacific lost the shield of attorney-client privilege because undisclosed communications between its lawyers and its paid-for scientists "could have been in furtherance of a fraud." *In re New York City Asbestos Lit.*, 966 N.Y.S. 2d 420, 423 (N.Y. App. Div. 2013). The court found it was "of concern that GP's in-house counsel would be so intimately involved in supposedly objective scientific studies, especially in light of GP's disclosures denying such participation," and approved *in camera* review under the crime-fraud exception. *Id.*

---

[12] Of course, permitting Georgia-Pacific to dredge up evidence from old cases also threatens the idea of finality: that asbestos victims and their families can move on with their lives once they have resolved their claims and lawsuits.

15

In light of the heavy concerns inherent in the confidential information it seeks, Bestwall's new litigation strategy deserves the same skepticism as its doubt-science efforts. The subpoenas inadequately protect claimant information from misuse, and there are scant penalties against Bestwall (or its agents) for dissemination. The claimants should not be commanded to entrust confidential information to a party found to have possibly furthered a fraud in concert with its lawyers. That is especially true here, where Bestwall seeks a sweepingly broad information dump unmoored from a tailored showing of relevance.

2. **Bestwall's Subpoenas Seek Information that was Always Available to Georgia-Pacific in the Tort System. Failure to Pursue Alternative Asbestos Exposures *Then* Cannot Justify a Fishing Expedition *Now*.**

To justify a subpoena, a requesting party "should be able to explain why it cannot obtain the same information, or comparable information that would also satisfy its needs" from another source. *Jordan*, 921 F.3d at 189. The burden of quashing/modifying a subpoena is "not terribly difficult" to meet "if the requesting party cannot articulate its need for the information and address obvious alternative sources." *Id.* at 189 n.2.

There is an "obvious alternative source" of subpoenaed information that has always been available to Bestwall: discovery in the tort system. Only Bestwall and its counsel know how many lawsuits it settled without cross-examining the plaintiff/claimant or conducting discovery. *See In re Nat'l Hockey League*, 2017 WL

16

1493671, *8 (D. Minn. 2017) (rejecting a party's asserted "need" for subpoenaed information and where experts already had access to sufficient data to formulate counter opinions). Its settlement history and reliance on exposure information are critical facts, known *only* to Bestwall, which undercut both Bestwall's theory of fraud and its overbroad subpoenas. If Georgia-Pacific chose not to solicit exposure information in the past, Bestwall should not be entitled to a fishing expedition now.

Georgia-Pacific, its adjusters, and its counsel were highly sophisticated parties in the tort system. The fact they chose to resolve the majority of their cases without a complete evidentiary picture fatally undercuts their broad subpoenas now. The challenged subpoenas present an on-its-face undue burden on the Trusts and Matching Claimants, since the burden could and should have been borne by Georgia-Pacific. The Court should quash the Trust subpoenas.

3. **If the Court will not Quash, Bestwall Must Provide a Particularized Factual Predicate: the Court Should Order Bestwall to Identify Which Claimants' Cases Resolved After Georgia-Pacific Assessed Alternate Asbestos Exposure.**

A requesting party should tailor a subpoena to its needs before serving it. *Jordan*, 921 F.3d at 190. In the absence of quashing, a protective order (or subpoena modification) can be an appropriate remedy for minimizing the release of confidential information. *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383–84 (E.D. Pa. 2013).

17

Bestwall has not even attempted to tailor the subpoenas by using available methods: collating data from its defense files and from local counsel who worked up cases or approved administrative deals. Should the Court decide that quashing the Trust subpoenas is too broad a remedy, it should alternatively order Bestwall to **[1]** limit its subpoenas to Trust claimants who settled their Georgia-Pacific cases without an administrative deal or group settlement, and **[2]** identify the case-specific discovery inquiries (*e.g.* interrogatories, cross-examination questions) to which alternative exposure facts are responsive. Only then will the fit between relevance and Matching Claimant confidentiality be proportional.

### D. Conclusion

Bestwall's predecessor settled the vast majority of its historical lawsuits without seeking any information about bankruptcy trust claims. In an effort to undo its own settlements, Bestwall now seeks highly confidential information. Under Rule 45, the Court must quash the Trust subpoenas for either of two reasons [1] the undue burden exposed by Bestwall/Georgia-Pacific's history of evidence-free group settlements, and [2] the heavy confidentiality interests in Matching Claimants' personal information. The failure to show a particularized need for the vast majority of the Matching Claimants' private data creates an undue, disproportionate burden on the Trusts and the Matching Claimants.

Even if the Court declines to quash the subpoena *in toto*, the information pertaining to any Matching Claimant who settled his/her Georgia-Pacific lawsuit via an administrative agreement must not be subject to the subpoenas. The Court should alternatively order Bestwall to [1] provide a specific list of Matching Claimants whose lawsuits against Georgia-Pacific were settled *after* Georgia-Pacific solicited information about alternative asbestos exposures, and [2] identify the specific discovery request to which alternative exposure evidence was responsive. Regardless, if the Court permits production of any personal information, it should require anonymization of the Matching Claimants' personal identifying information (names, SSNs, d/o/b) by either the Trusts or an independent third party before delivery to Bestwall and its agents.

Dated: May 24, 2021

Hogan♦McDaniel

/s/Daniel K. Hogan
Daniel K. Hogan (DE No. 2814)
Garvan F. McDaniel (DE No. 4167)
1311 Delaware Avenue, Suite 1
Wilmington, DE 19806
Telephone: 302.656.7540
dkhogan@dkhogan.com
gfmcdaniel@dkhogan.com

*Counsel for Matching Claimants*