IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE BESTWALL LLC, | : Underlying Case No. |
| | : 17-BK-31795 (LTB) |
| Debtor. | : (U.S. Bankruptcy Court for the |
| | : Western District of North Carolina) |
| | : |
| | : Misc. No. 21-141 (CFC) |

_____

Beth Moskow-Schnoll, Ballard Spahr LLP, Wilmington, DE.

   *Counsel for Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust; Celotex Asbestos Settlement Trust; Flintkote Asbestos Trust; Pittsburgh Corning Corporation Personal Injury Settlement Trust; WRG Asbestos PI Trust; Federal-Mogul Asbestos Personal Injury Trust; Babcock & Wilcox Company Asbestos PI Trust; United States Gypsum Asbestos Personal Injury Settlement Trust; and Owens Corning / Fibreboard Asbestos Personal Injury Trust.*

Chad S.C. Stover, Barnes & Thornburg LLP, Wilmington, DE; Garland S. Cassada, Stuart L. Pratt, Robinson, Bradshaw & Hinson, P.A., Charlotte, NC.

   *Counsel for Bestwall LLC*

**MEMORANDUM**

June 1, 2021
Wilmington, Delaware

_____
CONNOLLY, UNITED STATES DISTRICT JUDGE

I.      **INTRODUCTION**

Before the Court is the *Motion of Third Party Asbestos Trusts to Quash or Modify Subpoenas* (D.I. 1) ("Motion to Quash"), filed by nine asbestos settlement trusts identified below (the "Trusts"), seeking an order quashing or modifying subpoenas to produce electronically stored claimant information which have been served upon them and the Delaware Claims Processing Facility (the "DCPF") by Bestwall LLC, a debtor in a chapter 11 case currently pending in the United States Bankruptcy Court for the Western District of North Carolina ("NC Bankruptcy Court"). Several joinders to the relief requested in the Motion to Quash were filed by affected claimants (D.I. 3, 17, 20, 28) ("Additional Motions to Quash"). Also before the Court are (i) *Bestwall LLC's Motion to Transfer Proceedings* (D.I. 4) ("Motion to Transfer"), and (ii) *Bestwall LLC's Supplemental Motion to Transfer Proceedings* (D.I. 23) ("Supplemental Motion to Transfer"), which together seek orders transferring all of the Motions to Quash to the NC Bankruptcy Court.

For the reasons set forth herein, the Motion to Transfer and Supplemental Motion to Transfer are denied, and the Motions to Quash are granted without prejudice to Bestwall's right to reissue the subpoenas seeking a narrower document production that is consistent with the protections set forth in the order previously issued by the United States Bankruptcy Court for the District of Delaware ("DE

Bankruptcy Court") and affirmed by this Court and the United States Court of Appeals for the Third Circuit.

## II. BACKGROUND

### A. The Trusts[1]

Each of the Trusts was established by one or more corporate debtors-in-possession to assume those debtors' present and future liability for asbestos-related personal injury claims, as a prerequisite to having a United States District Court issue an asbestos claims channeling injunction pursuant to 11 U.S.C. § 524(g) to supplement the terms of the confirmation order in the debtor's bankruptcy case. The Trusts are not corporate defendants or insurance companies. They are limited funds whose sole purpose is to pay victims of asbestos-related diseases caused by the products of the debtors.

The Trust Agreements establishing each of the Trusts require that the Trustees administer, maintain, and operate the Trusts pursuant to certain written

---

[1] The ten Trusts are:
The Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust;
The Celotex Asbestos Settlement Trust;
The DII Industries, LLC Asbestos PI Trust;
The Flintkote Asbestos Trust;
The Pittsburgh Corning Corporation Personal Injury Settlement Trust;
The WRG Asbestos PI Trust;
The Federal-Mogul Asbestos Personal Injury Trust;
The Babcock & Wilcox Company Asbestos PI Trust;
The United States Gypsum Asbestos Personal Injury Settlement Trust; and
The Owens Corning / Fibreboard Asbestos Personal Injury Trust.

2

Trust Distribution Procedures (the "TDP"), provisions of which – both the Trust Agreement and the TDP – were approved by a United States District Court and thereby incorporated into the debtor's confirmed plan.

Each TDP expressly provides that submissions to the Trust by the holders of the channeled asbestos claims (the "Trust Claimants") (i) are intended to be confidential, (ii) will be treated as made in the course of settlement discussions between the claimant and the Trust, and (iii) are to be protected by all applicable privileges, including those applicable to settlement discussions. (*See, e.g.*, D.I. 1-1, Ex. A (Federal-Mogul Asbestos Injury Trust Distribution Procedures), § 6.5). Further, the TDPs of eight of the Trusts provide that the Trust shall "on its own initiative" take steps to preserve such privileges. (*Id.*)

### B. The Bestwell Bankruptcy and the Rule 2004 Motion

Bestwall is the debtor in a pending chapter 11 bankruptcy case in the NC Bankruptcy Court. Bestwell seeks evidence to support its contention that the Bankruptcy Court should adopt a low estimation of the total value of its liability for present and future asbestos personal injury claims.

Bestwall endeavors to show that the evidentiary value of the amount it paid to settle approximately 15,000 pre-bankruptcy mesothelioma claims is tainted because a significant percentage of the roughly 15,000 claimants withheld information about other alleged asbestos exposure, which resulted in Bestwall

3

overpaying for its share of such claimants' damages. (D.I. 1, Ex. C ("Rule 2004 Motion"), ¶¶ 2, 12).

Accordingly, on July 31, 2020, Bestwall moved under Bankruptcy Rule 2004 (the "2004 Motion") for authority to issue a subpoena on the DCPF for the production of electronically stored data concerning any of Bestwall's roughly 15,000 settled mesothelioma claimants who also filed a claim against one or more of the Trusts. Bestwall also sought authority to issue subpoenas on the Trusts, in the event the DCPF was to assert that such are necessary to secure production. (*Id.* at 3-4). Bestwall served the 2004 Motion on the DCPF, but not on any of the Trusts.

Thereafter, the DCPF filed a Response and Objection to the 2004 Motion, asserting, among other things, that (i) there is inherently sensitive information in its databases that relate to Trust Claimants; (ii) the databases include personal identifiers and medical information; and (iii) the improper dissemination of such information could harm the Trust Claimants in a variety of ways, ranging from identity theft to misuse in the tort system by other defendants. (D.I. 1, Ex. D ("CPF Response and Objection") at 16-23).

The DCPF's Response and Objection requested that the Court deny the 2004 Motion. It also alternatively requested that, if the Court granted the 2004 Motion, the Court enter an order with a number of confidentiality protections and use limitations, including:

4

> a. Limiting the production of Trust Claimants' data to a random sample of no more than 10% of the 15,000 mesothelioma victims at issue; and
> b. Authorizing the DCPF, or a neutral third party, to anonymize the Trust Claimants' claims data before producing it or, at minimum, requiring Bestwall and its experts to anonymize such data after it is produced, and barring Bestwall from re-associating claimant personally identifiable information with the anonymized data.

(*Id*. at 35-36). The DCPF's request was consistent with its duty under its Claims Processing Agreement with the Trusts to use its best efforts – when required to disclose confidential information – to ensure that such information will be treated as confidential by all who receive it.

On March 4, 2021, the Bankruptcy Court conducted a hearing during which the Judge concluded that Bestwall had met its burden of showing that the information sought is both relevant and necessary to the bankruptcy case, and that the 2004 Motion should be granted. The Bankruptcy Court also stated that it shared the DCPF's concerns about the confidential, proprietary, and inherently sensitive nature of the data that would be collected by Bestwall, and indicated that the 2004 Motion would be granted subject to certain conditions. (D.I. 1, Ex. E, 3/4/21 Hr'g Tr. at 13:16-14:10).

On March 24, 2021, the Bankruptcy Court entered an order granting the 2004 Motion subject to certain provisions governing confidentiality. (D.I. 1, Ex. B, 5-24). The March 24 Order also authorized Bestwall to subpoena the Trusts if necessary to effectuate such order. However, the March 24 Order did not limit the protection of data to a random sample of no more than 10% of the 15,000 claims at

5

issue, nor did it authorize a neutral party to anonymize the Trust Claimants' data before production. Instead, it authorized Bates White, LLC – a firm whose data science practice aggregates and analyzes data for use by its customers, and which acts as Bestwall's liability consultant – to anonymize the Trust Claimants' data.

The March 24 Order further requires the DCPF to identify a subset of matches to last names and social security numbers to Bates White by April 21, 2021. The DCPF is to provide Bates White with the complete data pertaining to matched claimants by May 28, 2021.

Bestwall intends to have Bates White take the extraordinarily sensitive claims files from the DCPF that relate to up to 15,000 Trusts Claimants, which are separately maintained by the Trusts, and pool them into a single database.

### C. The Subpoenas

On April 2 and April 5, 2021, pursuant to the March 24 Order, Bestwall served the subpoenas on each of the Trusts, c/o the Delaware Claims Processing Facility (the "DCPF") in Wilmington, Delaware or on DCPF's counsel. (*See generally* D.I. 1, Ex. B (aggregated subpoenas for the Trusts and DCPF)). The subpoenas compel the production of electronically stored confidential information submitted to the Trusts by more than 15,000 of the Trust Claimants.

Bestwall also served a subpoena for the Trust Claimants' data on the DCPF on April 5, 2021. The Trusts have contracted with the DCPF to process the Trust Claimants' claims according to the criteria and protocols of each Trust's TDP. As

such, the DCPF holds the Trusts' data related to the claims made by the Trust Claimants. Although the DCPF holds the data of the Trusts, because of confidentiality requirements, the Trusts do not have access to each other's data through the DCPF or otherwise.

> D. **The Motion to Quash**

The Trusts filed the Motion to Quash based on the confidentiality provisions of the Trusts' TDPs. These provisions make clear that the Trusts are not to serve as information clearinghouses or "public libraries" for entities that wish to obtain confidential claimant information for their own commercial purposes. Rather, each Trust should take reasonable and necessary steps to protect the confidentiality of the information submitted to it by the Trust Claimants when that information is sought by third parties for purposes other than determining whether the claims submitted to the Trust in question are valid and payable.

Pursuant to the Court-approved confidentiality provisions of the TDPs requiring the Trusts to take action to protect Trust Claimants' confidential information, the Trusts request that this Court quash each of the subpoenas served on the Trusts and the DCPF by Bestwall. According to the Trusts, the highly sensitive, personal, and confidential nature of the information sought by Bestwall, as well as the unnecessary scale of disclosure sought, weigh decisively in favor of quashing the subpoenas or modifying the sample size to be produced. The Trust Claimants' submissions to the Trusts disclose medical records, sensitive personal

7

health information, information about claimants' personal finances, and information regarding claimants' family members – all of which was disclosed with the expectation that such information will be kept confidential. The Trusts assert that this expectation of confidentiality should not be violated, especially where, as here, "no need is shown" for information that could include up to 15,000 claimants' private records. (*See* D.I. 1 at 7-8 (citing *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002)). Alternatively, the Trusts request the entry of an order protecting their confidentiality concerns by modifying each of the subpoenas to:

    a.    Limit the production of data to a random sample of no more than 10% of the roughly 15,000 mesothelioma victims at issue; and

    b.    Require the DCPF to anonymize the Trusts' claims data before producing complete data to Bates White or Bestwall.

(D.I. 1 at 6).

According to the Trusts, Bestwall's demand for information about as many as 15,000 Trust Claimants is overbroad and misaligned with the inquiry it purportedly plans to undertake. Bestwall seeks the subpoenaed information to determine whether there was a pattern of false claims submissions to it or its predecessor, and whether any such pattern was prevalent. The Trusts argue that Bestwall does not need the personal information of up to approximately 15,000 individuals to determine if such a pattern exists. Rather, producing data for a random sample of up to 10% of the 15,000 claimants would provide a statistically

8

significant sample of the claims in issue, sufficient to satisfy any right Bestwall might have to obtain a representative sample. Conversely, Bestwell argues that the subpoenas issued by the NC Bankruptcy Court are relevant and necessary to the chapter 11 case. Bestwell further argues that the Motion to Quash is a collateral attack on the March 24 Order.

Various affected parties have filed similar requests for relief, requesting that this Court quash or modify the subpoenas or, alternatively, issue a protective order.

E. **The Motion to Transfer and Supplemental Motion to Transfer**

On April 23, 2021, Bestwell filed the Motion to Transfer and subsequently filed the Supplemental Motion to Transfer. According to Bestwell, the NC Bankruptcy Court is best positioned to rule on the Motion to Quash, having considered these identical issues in the Chapter 11 case. Bestwell argues that consolidation of the litigation of the Trusts' objections in the NC Bankruptcy Court will promote judicial economy and avoid the risk of inconsistent rulings on the same issues. (*See* D.I. 5 at 19-20).

III. **JURISDICTION AND STANDARDS OF REVIEW**

With the exception of three cases, each of the bankruptcy cases pursuant to which the Trust was established was conducted in the DE Bankruptcy Court.[2]

---

[2] The bankruptcy cases of Pittsburgh Corning Corporation and DII Industries, LLC were conducted in the U.S. Bankruptcy Court for the Western District of Pennsylvania, and the bankruptcy case of Celotex Corporation was conducted in the U.S. Bankruptcy Court for the Middle District of Florida.

Each of the Trusts was established to assume those debtors' present and future liability for asbestos-related personal injury claims and this Court issued channeling injunction pursuant to § 524(g) to supplement the terms of the confirmation order in each Debtor's bankruptcy cases. The Trust Agreements establishing each of those Trusts require that the Trustees administer, maintain, and operate the Trusts pursuant to the TDP's which were also approved by this Court and incorporated into each Debtor's confirmed plan. Each TDP expressly provides that submissions to the Trust by Trust Claimants (i) are intended to be confidential, (ii) will be treated as made in the course of settlement discussions between the claimant and the Trust, and (iii) are to be protected by all applicable privileges, including those applicable to settlement discussions. Further, the TDPs of nine of the Trusts provide that the Trust shall "on its own initiative" take steps to preserve such privileges. (*Id*.)

"Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Comm'ns, Inc.*, 435 U.S. 589, 598 (1978).

## IV. ANALYSIS

### A. The Motion to Transfer and Supplemental Motion to Transfer

The Motion to Quash is properly before this Court. Federal Rule of Civil Procedure 45(d)(3)(A) requires a subpoenaed party to move to quash or modify the subpoena in the district where compliance is required, not in the court that issued

the subpoena (unless the two are the same).  Rule 45(f) provides that the compliance court may transfer a motion to quash or modify only "if the person subject to the subpoena consents or if the court finds exceptional circumstances." The Trusts have not, and will not, consent to transfer.  Therefore, the Court may only exercise its discretion to transfer the Motion to Quash if "exceptional circumstances" exist.

Rule 45(f) does not define "exceptional circumstances," but the Rule 45(f) Advisory Committee Note makes clear that the party requesting transfer bears the burden of showing such circumstances are present.  Fed. R. Civ. P. 45(f), Advisory Committee Note (2013 amendments).  According to the Advisory Committee Note, "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."  *Id*.  The Court's primary consideration is to avoid "burdens on local nonparties subject to subpoenas."  *Id*.  Transfer is warranted only if the exceptional circumstances favoring transfer outweigh the interest of the nonparty served with the subpoena in resolving the motion locally. *Id*.

Bestwell has not established exceptional circumstances.  Bestwall tries to paint the Motion to Quash as an improper collateral attack on the Issuing Court's March 24 Order, but this characterization is improper.  (D.I. 5 at 16).  Rule 45(d)(3)(A) provides that only "the court for the district where compliance is required" has the initial power to quash or modify a subpoena.  Fed. R. Civ. P.

45(d)(3)(A). Any motion seeking to quash or modify a subpoena must therefore be brought in the district of compliance. Courts routinely dismiss motions to quash that are not filed in the district of compliance. *See, e.g., Arrowhead Cap. Fin., Ltd v. Seven Arts Entm't, Inc.*, 2021 U.S. Dist. LEXIS 23058, at *7-8 (S.D.N.Y. Feb. 5, 2021) (dismissing motion to quash without prejudice as to reassertion in the district where compliance is required); *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 250805, at *6-7 (N.D. Fla. Nov. 18, 2020) (dismissing motion to compel that was not filed in the district of compliance). As set forth in the Motion to Quash, the District of Delaware is the district of compliance and Rule 45 required the Trusts to file the Motion to Quash here. (D.I. 1 at 7 n.1).

Bestwell has further failed to carry its burden of showing that exceptional circumstances exist *and* outweigh the Trusts' strong interests in resolving the motion locally. Here, the Trusts have strong interests in this Court resolving the Motion to Quash given its vested interest in the Trusts and the sensitive Trust Claimant data Bestwall seeks. A majority of the Trusts are Delaware statutory trusts, and this Court approved a majority of the Trust Agreements and TDPs giving rise to the Trusts' fiduciary duties which underlie the Motion to Quash. Moreover, the confidential data Bestwall seeks is located in this district and subject to this Court's jurisdiction. Even assuming the circumstances Bestwall proffers are "exceptional," transfer is not warranted because these circumstances do not outweigh the Trusts' strong interests in a local resolution, and transfer would

significantly burden those interests. Transfer would deprive the Trusts the opportunity to have this Court – the Court that approved and implemented a majority of the Trusts' fiduciary obligations to the Trust Claimants – define the scope of their fiduciary obligations and protections of data held in this district pursuant to that obligation.

### B. The Motion to Quash

Through the subpoenas authorized by the NC Bankruptcy Court, Bestwall seeks sweeping personal data for Bestwall Claimants who filed claims with a DCPF Trust:

    a.    Claimant identifying information, which is comprised of:
        i.    the full name of the injured party;
        ii.    the injured party's Social Security number, gender, date of birth, date of death, state of residency, date of diagnosis, and body site (if available);
        iii.    the full name of any claimant who is not the injured party and his or her Social Security number;
        iv.    and claimant's law firm, jurisdiction of tort claim filing, and date of tort claim filing.

    b.    Date claim filed;

    c.    Date claim approved, if approved;

    d.    Date claim paid, if paid;

    e.    If not approved or paid, status of the claim;

    f.    All exposure-related fields, including:
        i.    Date(s) exposure(s) began;

   ii. Date(s) exposure(s) ended;

   iii. Manner of exposure;

   iv. Occupation and industry when exposed; and

   v. Products to which exposed;

  g. Mode of review selected;

  h. Mode of review under which the claim was approved and paid.

(*See* D.I. 12 at 10-11). According to Bestwell, this data is needed "to determine the extent to which Bestwall Claimants failed to disclose in tort litigation relevant evidence of exposure to the products of bankrupt asbestos defendants—evidence that was used to assert Trust claims." (Trust Motion ¶¶ 11-18).

  Here, six of the Trusts from which information is sought were approved and implemented by this Court. This is not the first time that a party has sought access to Trust Claimants' highly sensitive data. In a more recent attempt, Honeywell International Inc. and Ford Motor Company together sought unconditional access to thousands of exhibits ("2019 Exhibits") that were submitted to the DE Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 2019 in connection with administering nine asbestos bankruptcies (the "Consolidated Cases") – among them, notably, Debtors whose cases resulted in Trusts targeted here: The Armstrong World Industries Asbestos Personal Injury Settlement Trust, The Flintkote Asbestos Trust, The Owens Corning / Fibreboard Asbestos Personal

Injury Trust, and The United States Gypsum Asbestos Personal Injury Settlement Trust.

Honeywell and Ford sought an order from the DE Bankruptcy Court granting them unlimited access to the 2019 Exhibits[3] for use by any party and for any purpose. The Bankruptcy Court entered an order in each of the Consolidated Cases granting only limited access to the 2019 Exhibits for the limited purpose of investigating potential fraud in the claims process. *See In re Owens Corning*, 560 B.R. 229 (Bankr. D. Del. 2016 ) ("Access Decision"). The Bankruptcy Court concluded that providing unlimited access to the 2019 Exhibits would pose an undue risk of identity theft and exposure to private medical information. The DE Bankruptcy Court imposed additional limitations on access as well. In particular, the Bankruptcy Court held that access would be granted solely for a three-month period, after which the 2019 Exhibits had to be destroyed. *See id*. Honeywell and Ford were further prohibited from sharing the identity of individuals by name or other identifying means. *See id*. Finally, the Bankruptcy Court determined it appropriate to appoint an independent facilitator to oversee production of the 2019 Exhibits, including, but not limited to, the removal of the retention agreements and

---

[3] Under the version of Bankruptcy Rule 2019 in effect at that time, a 2019 Statement (when required) needed to contain certain identifying information (e.g., name and address, nature and amount of claim or interest, etc.) about the creditors and equity holders being represented by the entity preparing the 2019 Statement (e.g., a law firm).

15

all but the last four digits of social security numbers, and imposed the costs associated with the efforts of the facilitator on Appellants. (*See id*.)

Believing they were entitled to unlimited access, Honeywell and Ford appealed the Access Decision. In a lengthy opinion, the Access Decision was later affirmed by this Court. *In re Motions Seeking Access to 2019 Statements*, 585 B.R. 733 (D. Del. 2018). The Third Circuit later affirmed the Access Decision as well. *In re A C & S Inc.*, 775 Fed. App'x 78 (3d Cir. 2019).

Here, unlike in the *A C & S* case, Bestwell has not sought unlimited access to Trust Claimant data for any purpose. Rather, Bestwell has demonstrated a legitimate purpose in requesting the Claimant data to aid in plan formulation and estimation proceedings. Additionally, the protections set in place by the NC Bankruptcy Court will go a long way toward protecting Trust Claimants' sensitive data. However, Bestwell has not sought relief from the Bankruptcy Court that issued the orders establishing and governing the Trusts. It appears that additional safeguards must be included in order to comply with previous protections granted by the DE Bankruptcy Court in those cases, including, but not limited to, appointment of an independent facilitator to oversee production.[4]

---

[4] Because the parties have sought an expedited ruling on these motions, the Court has not engaged in a detailed comparison of the protections ordered by the NC Bankruptcy Court and those granted in the DE Bankruptcy Court's Access Decision.

## V. CONCLUSION

For the reasons explained above, the Court will deny the Motion to Transfer and Supplemental Motion to Transfer. The Motion to Quash is granted without prejudice to Bestwell's right to seek reissuance of the subpoenas seeking a narrower document production that is consistent with the protections afforded by the Bankruptcy Court's Access Decision.